REVENUE CABINET, Commonwealth of Kentucky, Appellant,

v.

Erika HUBBARD, Administrator of the Estate of Andy H. Hubbard, d/b/a Stone Age Dental Laboratory, and John W. Bianchi, D.M.D., Appellees,

and

Erika Hubbard, Administrator of the Estate of Andy H. Hubbard, d/b/a Stone Age Dental Laboratory, and John W. Bianchi, D.M.D., Cross–Appellants,

v.

Revenue Cabinet, Commonwealth of Kentucky, Cross–Appellee.

No. 1999–SC–0171–DG, 1999–SC–0992–DG.

Supreme Court of Kentucky.

Dec. 21, 2000.

Rehearing Denied March 22, 2001.

Lauren Anderson, Douglas M. Dowell, Revenue Cabinet, Division of Legal Services, Frankfort, Counsel for Appellant/Cross–Appellee.

H. Kent Hendrickson, Rice & Hendrickson, Harlan, Counsel for Appellees/Cross–Appellants.

JOHNSTONE, Justice.

Appellee, John W. Bianchi, D.M.D., purchased dental items, *e.g.*, dentures, crowns, bridges, braces, etc., from Appellee, Stone Age Dental Laboratories. Bianchi paid sales taxes on these items. Bianchi requested a tax refund from the Revenue Cabinet (hereinafter "the Cabinet") for taxes paid on these items on grounds that these items are exempt from sales and use taxes pursuant to KRS 139.472. The Cabinet denied the request. The matter was appealed to the Kentucky Board of Tax Appeals, which affirmed the Cabinet's denial of the refund. Bianchi and Stone Age appealed to the Harlan Circuit Court,

which reversed the Kentucky Board of Tax Appeals. The Cabinet appealed to the Court of Appeals which affirmed in part and reversed in part. We granted discretionary review. We reverse and remand.

■ There are no facts in dispute in this case. The issue presented, statutory construction of KRS 139.472, is purely a matter of law and is subject to *de novo* review by this Court. *Bob Hook Chevrolet Isuzu v. Commonwealth, Transportation Cabinet*, Ky.; 983 S.W.2d 488, 490–91 (1998).

■ We begin with the basic rule of statutory construction that tax exemptions are narrowly construed, and the party seeking the exemption has the burden to show that he, she, or it is entitled to the exemption. *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet*, Ky., 689 S.W.2d 14, 17 (1985); *see also* KRS 139.260, which codifies this rule of construction.

Bianchi and Stone Age argue that KRS 139.472(2) exempts the dental items in question from Kentucky's sales and use tax. KRS 139.472(2) provides:

"Prosthetic devices and physical aids" for the purpose of this section shall mean and include artificial devices prescribed by a licensed physician, or individually designed, constructed or altered solely for the use of a particular crippled person so as to become a brace, support, supplement, correction or substitute for the bodily structure including the extremities of the individual; artificial limbs, artificial eyes, hearing aids prescribed by a licensed physician, or individually designed, constructed or altered solely for the use of a particular disabled person; crutches, walkers, hospital beds, wheelchairs and wheelchair lifting devices for the use of invalids and crippled persons; colostomy supplies, insulin and diabetic supplies, such as hypodermic syringes and needles, and sugar (urine and blood) testing materials purchased for use by diabetics.

■ Dentists are not licensed physicians within the meaning of the statute, thus we focus on the second part of the statute in order to determine whether the dental items in question qualify as "prosthetic devises ... individually designed, constructed or altered solely for the use of a particular crippled person so as to become a brace, support, supplement, correction or substitute for the bodily structure ...." The resolution of this question turns on what is meant by the word "crippled."

*Webster's New International Dictionary* (2d ed.1960), defines "cripple" as:

(1) to deprive of the use of a limb and especially a leg;

(2) to deprive of capability for service or of strength, efficiency, or wholeness.

Under this definition, someone is physically "crippled" when he or she is deprived of the use of a limb. The statute embraces this definition of the term. The statute twice refers to "crippled person(s)." The second reference exempts "crutches, walkers, hospital beds, wheelchairs and wheelchair lifting devices for the use of invalids and crippled persons." Clearly, this exemption is limited to persons who have difficulty walking or are unable to walk.

The first reference in the statute exempts a prosthetic device "individually designed, constructed or altered solely for the use of a particular crippled person so as to become a brace, support, supplement, correction or substitute for *the* bodily structure including *the extremities* of the individual ...." (emphasis added). The Court of Appeals held that this part of the statute exempted the dental items in question.

"Extremity" is defined as: "A limb of the body; an arm or a leg; esp., the end part of it." *Webster's New International Dictionary* (2d ed.1960). The specific inclusion of the word "extremities" makes clear that limbs, and any part thereof, are included in the term "bodily structure." While we are unable to find a definition for the term "bodily structure," the use of the

definite article "the" indicates that the statute refers to the entire body and not to discrete parts or components that could be considered a "bodily structure," *e.g.,* the mouth. In other words, a person who needs dentures, crowns, bridges or braces *for his or her teeth* is not "crippled" within the meaning of the statute.

We find support for our construction of the statute in the Connecticut Supreme Court's construction of a similar statute in *Dent–Craft Laboratories of Conn., Inc. v. Sullivan, Tax Commissioner,* 148 Conn. 94, 167 A.2d 714 (1961). The *Dent–Craft* Court was presented with the same issue as in this case, *i.e.,* whether "the gross receipts derived by dental laboratories from sales of dentures to duly licensed dentists [are] exempt from sales tax" under Connecticut's applicable tax exemption statute. *Id.* at n. 1. The statute in question exempts in pertinent part:

> Sales of oxygen, blood or blood plasma when sold for medical use; *sales of artificial devices individually designed, constructed or altered solely for the use of a particular crippled person so as to become a brace, support, supplement, correction or substitute for the bodily structure, including the extremities of the individual;* sales of artificial limbs, artificial eyes and other equipment worn as a correction or substitute for any functioning portion of the body, and artificial hearing aids when designed to be worn on the person of the owner or user; sales of crutches and wheel chairs for the use of invalids and crippled persons.

*Id.* at n. 2 (emphasis added).

The emphasized part of the above statute is almost identical to the part of KRS 139.472(2) that the Court of Appeals held to be applicable to the dental items in the case at bar. While the *Dent–Craft* Court did hold that the dental items were exempt under the Connecticut statute, it did not hold that the items were exempt under the portion of the Connecticut statute common to KRS 139.472(2). Rather, the *Dent–Craft* Court held that the items were exempt under the part of the statute that exempted "sales of artificial limbs, artificial eyes and other equipment worn as a correction or substitute for any functioning portion of the body ...." *Id.* at 716. KRS 139.472(2) has a similar section which exempts "artificial limbs, artificial eyes, hearing aids prescribed by a licensed physician, or individually designed, constructed or altered solely for the use of a particular disabled person." The important difference between the two sections is that Connecticut's version is inclusive, whereas Kentucky's version is exclusive. Thus, our holding necessarily differs from the *Dent–Craft* Court.

■ We now briefly address the cross-appeal. The Court of Appeals held that part of the Appellees' application for a tax refund was time barred by KRS 134.580. Given our holding that the dental items in question are not tax exempt and, thus, the Appellees are not entitled to a tax refund, the issue is moot.

Finally, we grant the Appellees' motion to file supplemental authority.

We hold that the Appellees have not met their burden of showing the exemption applies to the dental items in question. Therefore, the decision of the Court of Appeals is hereby reversed and this case is remanded to the Harlan Circuit Court to enter a judgment consistent with this opinion.

COOPER, GRAVES, KELLER, STUMBO, and WINTERSHEIMER, JJ., concur.

LAMBERT, C.J., dissents by separate opinion.

LAMBERT, Chief Justice, dissenting.

Respectfully, I dissent.

The majority opinion offers an excessively technical interpretation of the statute that renders it at odds with the stat-

ute's more commonsense meaning and purpose. The statute is very broad and should not be given such a narrow construction.

To determine the meaning of "crippled," the majority quotes a two-part dictionary definition of the verb "to cripple." Yet the majority then relies only upon the first part of the definition and fails to even acknowledge the second part, which is as follows: "[T]o deprive of capability for service, efficiency, or wholeness." According to this definition, one without teeth or with defective teeth would be crippled, as such a person would be deprived of the ability to eat and digest food effectively and efficiently, and might also be unable to speak coherently. This, if we are to rely on dictionary definitions, the whole definition should be applied rather than just a portion of it.

Dictionary definitions aside, the tenor and purpose of the statute leaves no doubt in my mind that it applies to dental prosthetics. The statute refers to items individually designed for a particular person that "substitute for the bodily structure." There can be no doubt that false teeth, bridges, braces, and crowns fall into this category. Moreover, there is no reason in logic to exclude such prosthetic devices. I can think of no rational basis to allow the tax exemption for artificial limbs, artificial eyes, hearing aids, and other items in the statute and deny the exemption for prosthetic dental devices. While a distinction might be made for artificial limbs necessary for ambulation, artificial eyes serve only a cosmetic purpose, and while hearing aids are undoubtedly important, I doubt whether they would be universally regarded as more important than artificial dental devices.

It is not the role of this Court to analyze the wisdom of legislation that creates tax exemptions, yet when the legislature has spoken, this Court should not impose artificial limitations on the Act. Rather, we should give effect to it in a reasonable and common sense manner.