Danny D. BENNINGFIELD, Appellant,

v.

PETTIT ENVIRONMENTAL,
INC., Appellee.

No. 2004–CA–001632–MR.

Court of Appeals of Kentucky.

Sept. 16, 2005.

Discretionary Review Denied by
Supreme Court Feb. 15, 2006.

Kenneth L. Sales, Joseph D. Satterley, Jesse A. Mudd, D. Matthew Kannaday, Louisville, KY, for Appellant.

Donna King Perry, Wendy C. Hyland, Louisville, KY, for Appellee.

Before BARBER and JOHNSON, Judges; MILLER, Senior Judge.[1]

## OPINION

BARBER, Judge.

Appellant, Danny D. Benningfield (Benningfield), appeals from an order issued by Jefferson Circuit Court which granted a motion to dismiss Benningfield's wrongful discharge claim and granted summary judgment on Benningfield's intentional infliction of emotional distress (IIED) claim in favor of the Appellee, Pettit Environmental, Inc., (Pettit). We affirm.

In March of 2000, Benningfield was hired by Pettit as an Environmental Technician. As a condition of his employment Benningfield was required to complete certain certifications. These certifications required Benningfield to complete training courses. In a letter dated July 25, 2002, Benningfield informed Pettit that he did not believe that he had received the training for which he was credited. Because Benningfield believed that Pettit was not providing proper training, he notified the Occupational Safety and Health Administration (OSHA) about his concerns. OSHA consequently performed an on-site inspection. Subsequently, in December 2002 Benningfield and two other Environmental Technicians were laid off. Pettit's General Manager, Rich Zachgo, informed Benningfield that he and the two other Environmental Technicians were chosen for the lay-off because they did not hold commercial driver's licenses (CDL).

Benningfield later filed an administrative discrimination charge based upon KRS 338.121 with the Kentucky Labor Cabinet. That charge was investigated and dismissed. Benningfield then filed suit in Jefferson Circuit Court alleging wrongful discharge and IIED. In an order dated July 16, 2004, the trial court granted Pettit's motion to dismiss the wrongful discharge claim, and also granted summary judgment in favor of Pettit on Benningfield's IIED claim. This appeal followed.

---

1. Senior Judge John D. Miller sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

First, we consider whether the trial court's granting of Pettit's motion to dismiss Benningfield's wrongful discharge claim was proper. A motion to dismiss should only be granted if "it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari–Mutuel Clerks' Union v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky.1977). When ruling on the motion, the allegations in "the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Gall v. Scroggy*, 725 S.W.2d 867, 868 (Ky.App.1987). In making this decision, the trial court is not required to make any factual findings. *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App.2002). Therefore, "the question is purely a matter of law." *Id.* Accordingly, the trial court's decision will be reviewed *de novo*. *Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 719 (Ky.2000).

Employment relations in Kentucky are generally terminable at will. *Firestone Textile Co. v. Meadows*, 666 S.W.2d 730 (Ky.1984). As such, "[a]n employer may discharge his at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible." *Id.* at 731. However, "[a]n employee has a cause of action for wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law.…" *Id.* (quoting *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834, 840 (1983)). Thus, an employee may file a wrongful discharge claim if he or she was terminated in violation of a well-defined public policy. But, this exception only applies when the statute creating the public policy exception does not provide a structure for pursuing a claim. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky.1985).

In the present case Benningfield asserts that he was terminated in violation of the well-defined public policy in KRS 338.121, which states in pertinent part:

(3)(a) No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this chapter; and

(b) Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may, within a reasonable time after such violation occurs, file a complaint with the commissioner alleging such discrimination. Upon receipt of such complaint, the commissioner shall cause such investigation to be made as deemed appropriate. If upon such investigation, the commissioner determines that the provisions of this subsection have been violated, he shall issue a citation to the employer which may be challenged or contested in accordance with the provisions of this chapter and the review commission may order all appropriate relief including rehiring and reinstatement of the employee to his former position with back pay. Upon an initial determination by the commissioner that an employee has been discharged by an employer in violation of subsection (3)(a) of this section, the secretary may order reinstatement of the employee pending a final determination and order of the review commission.

Pettit argues that this statute both defines the wrongful act and specifies the civil remedy available and as such preempts Benningfield's wrongful dis-

charge claim. In support of this position Pettit cites *Hines v. Elf Atochem North America, Inc.,* 813 F.Supp. 550 (W.D.Ky.1993), aff'd, 47 F.3d 1169 (6th Cir.1995) which applied the holding in *Grzyb* to KRS 338.121. Benningfield responds by stating that we are not bound by this decision, as *Hines* was a federal case, and that the Court in *Hines* did not engage in "any substantive analysis" as to whether KRS 338.121 preempts wrongful discharge claims brought under it. While it is true that we are not bound by the decision in Hines, we deem that authority to be persuasive. When KRS 338.121 is read, it is clear that it forbids the firing of an employee for filing a complaint with OSHA. Also, it specifies that any employee "who believes that he has been discharged or otherwise discriminated against by any person in violation of this subsection may ... file a complaint with the commissioner alleging such discrimination." Therefore, we find that KRS 338.121 provides both the public policy exception and provides the remedy for its violation.

Next, Benningfield argues that the statute in *Grzyb* is "significantly different" than the statute at issue here and therefore, the holding in *Grzyb* does not apply to this case. However, the Court in *Grzyb* did not limit its decision to KRS 344.270, which was the statute at issue in that case, or to statutes similar in nature to KRS 344.270. In fact, that Court stated that "[w]here the statute both declares the unlawful act and specifies the civil remedy available to the aggrieved party, the aggrieved party is limited to the remedy provided by the statute." *Grzyb v. Evans, supra,* at 401. Thus, the holding clearly applies to all statutes that specify the unlawful act and provide the remedy available to aggrieved parties, not just to KRS 334.370.

Also, Benningfield asserts that because KRS 338.121 states that an employee "may" file a complaint with the commissioner, it merely gives a possible course of action and is therefore not an exclusive remedy. However, *Grzyb* does not require the statute to specify that the remedy provided is exclusive. *Grzyb* only requires that the statute "specif[y] the civil remedy available," *Id.* and KRS 338.121 specifies the remedy available by directing an aggrieved employee that he or she may file a complaint with the commissioner.

In keeping with the holding in *Grzyb,* we hold that the Benningfield's wrongful discharge claim, under KRS 338.121, is preempted because the statute provides both the unlawful act and specifies the civil remedy available to aggrieved parties.

Now, we turn to Benningfield's IIED claim. We must determine whether the trial court properly granted summary judgment in favor of Pettit on the IIED claim. "The ... purpose of ... summary judgment is to terminate litigation when, as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Roberson v. Lampton,* 516 S.W.2d 838, 840 (Ky.App.1974). Summary judgment should only be granted "where the movant shows that the adverse party could not prevail under any circumstances." *Paintsville Hospital Company v. Rose,* 683 S.W.2d 255, 256 (Ky.1985). "The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft,* 916 S.W.2d 779, 781 (Ky.App.1996). In making this determination, "[t]he record must be viewed in a light most favorable to the party opposing the motion for summary

judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). Since factual findings are not at issue, *Scifres v. Kraft, supra* at 781, the decision shall be reviewed *de novo. Revenue Cabinet v. Hubbard, supra* at 719.

■ Kentucky has long recognized the tort of intentional infliction of emotional distress (IIED). See *Craft v. Rice,* 671 S.W.2d 247 (Ky.1984). In Kentucky, a party can recover under IIED if it is shown that: (1) the wrongdoer's conduct was intentional or reckless, (2) the wrongdoer's conduct was outrageous and intolerable, (3) there is a causal connection between the conduct and the emotional distress, and (4) the emotional distress suffered is severe. *Wilson v. Lowe's Home Center,* 75 S.W.3d 229, 238 (Ky. App.2001).

Benningfield contends that all four elements are met and that he produced sufficient evidence of such to survive summary judgment. Pettit counters by stating that summary judgment was proper because there was no "extreme and outrageous" conduct and that Benningfield did not suffer "severe emotional distress." Since Pettit only raises issues regarding two of the elements of IIED, we will limit our analysis to those elements.

■ First, in order for conduct to be considered "extreme and outrageous" it must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency...." *Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1, 3 (Ky.1990). In the present case, Benningfield only alleges his termination as grounds for his IIED claim. Mere termination clearly does not rise to the level of outrageous conduct required to support an IIED claim. Other jurisdictions which follow the Restatement (Second) of Torts § 46, as Kentucky does, have held that termination does not rise to the level of outrageous conduct required for an IIED claim. *Craft v. Rice, supra* at 251. In fact, the Sixth Circuit, applying Ohio law, held that "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct'." *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir.1999). Therefore, Pettit's act of terminating Benningfield does not rise to the level of "extreme and outrageous" conduct that is required to sustain an IIED claim.

■ Second, to meet the standard of severe emotional distress the injured party must suffer distress that is "substantially more than mere sorrow." *Gilbert v. Barkes,* 987 S.W.2d 772, 777 (Ky.1999). In the present case, Benningfield alleges that the embarrassment he suffered as a result of losing his job satisfies this element. However, mere embarrassment does not rise to the level required to meet the "substantially more than mere sorrow" standard, as set out in *Gilbert.* Thus, the "severe emotional distress" element has not been met.

Because Benningfield has failed to show that Pettit engaged in "extreme or outrageous" conduct or that he suffered "severe emotional distress," we hold that Benningfield's IIED claim cannot be maintained. As such, the granting of summary judgment was proper.

■ Also, Benningfield asserts that summary judgment was not proper because he had not completed discovery at the time the judgment was entered. When reviewing a motion for summary judgment "[t]he inquiry should be whether, from the evidence of record, facts exist which would make it possible for the nonmoving party to prevail. In the analysis, the focus should be on what is of record rather than what might be presented at

trial." *Welch v. American Publishing Co. of Kentucky,* 3 S.W.3d 724, 730 (Ky.1999). "When the moving party has presented evidence showing that despite the allegations of the pleadings there is no genuine issue of any material fact, it becomes incumbent upon the adverse party to counter that evidentiary showing by some form of evidentiary material reflecting that there is a genuine issue pertaining to a material fact." *Neal v. Welker,* Ky., 426 S.W.2d 476, 479 (1968). However, "[t]he hope or bare belief ... that something will 'turn up,' cannot be made basis for showing that a genuine issue as to a material fact exists." *Id.* at 479–80. In the present case, Benningfield has not alleged anything that would support his IIED claim, and the hope that something will come to light in additional discovery is not enough to create a genuine issue of material fact. Therefore, the timing of summary judgment was also proper.

For the foregoing reasons, the findings of the Jefferson Circuit Court are affirmed.

MILLER, Senior Judge, Concurs.

JOHNSON, Judge, Concurs in Part, Dissents in Part, and Files Separate Opinion.

JOHNSON, Judge, Concurring in Part and Dissenting in Part.

I concur with the Majority Opinion's affirming of the trial court's summary judgment on Benningfield's claim for intentional infliction of emotional distress. However, I respectfully dissent as to the dismissal of his claim for wrongful discharge.

The result of the Majority Opinion turns on its conclusion that *Grzyb, supra,* "does not require the statute to specify that the remedy provided is exclusive."[2] This reading of *Grzyb* totally ignores the following critical language:

KRS 344.040 provides that it is "unlawful practice for an employer ... to discharge any individual ... because of such individual's race, color, religion, national origin, sex, or age between forty (40) and seventy (70)." The Kentucky Commission on Human Rights is structured in KRS Chapter 344 to adjudicate complaints of discrimination on these grounds. Thus, the same statute which would provide the necessary underpinning for a wrongful discharge suit where there is sufficient evidence to prove sex discrimination in employment practices also structures the remedy. *The statute not only creates the public policy but preempts the field of its application* [emphasis added].[3]

Thus, the holding of *Grzyb* clearly turns on the exclusivity of the remedies provided in Chapter 344 which preempt any other action.

KRS 344.270 provides as follows:

The provisions of KRS 13B.140 notwithstanding, commission shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance under KRS 344.450 is pending. A state court shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance is pending before the commission. A final determination by a state court or a final order of the commission of a claim alleging an unlawful practice under KRS 344.450 shall exclude any other administrative action or proceeding brought in accor-

2. Op. at 571.

3. *Grzyb,* 700 S.W.2d at 401.

dance with KRS Chapter 13B by the same person based on the same grievance.

KRS 344.450 provides as follows:

> Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations and to recover the actual damages sustained, together with the costs of the law suit. The court's order or judgment shall include a reasonable fee for the plaintiff's attorney of record and any other remedies contained in this chapter.

A remedy selected under these statutes becomes the exclusive remedy.[4]

Conversely, KRS 388.121 fails to limit redress in the circuit court following the determination by the Commissioner of the Kentucky Department of Workplace Standards. I am convinced that if the Legislature had chosen to enact an exclusive remedy for a work safety violation, it would clearly have done so as it did for civil rights violations.

Further, I find nothing persuasive in the holding in *Hines*, since the U.S. District Court merely stated its holding without providing any analysis concerning the preemption language in the civil rights statutes. The Court merely stated that it was applying "the teachings of *Grzyb* [to] the wrongful discharge claims pertaining to OSHA"[5] without recognizing that *Grzyb*

turned on the exclusivity provisions in KRS 344.270 and 344.450.

I do find *Gutierrez v. Sundancer Indian Jewelry, Inc.*,[6] to be persuasive. This New Mexico case is analogous to the case before us because the employee alleged that he had been wrongfully discharged by his employer in retaliation for requesting a safety investigation. The employee first pursued an administrative action against his employer, and then filed a civil lawsuit which was dismissed by the trial court. The Court of Appeals of New Mexico concluded that in New Mexico the common law requires an employer to exercise reasonable care to provide an employee with a safe workplace, a public policy exception has been recognized to the common law employment-at-will doctrine, and nothing in the safety act indicates the Legislature intended to preempt common law remedies.[7] Accordingly, the Court held that New Mexico's safety act was not intended to preempt common law remedies for an employee alleging wrongful discharge in retaliation for reporting safety violations and it reversed the summary judgment dismissing the employee's action.[8]

Similarly, I would reverse the Jefferson Circuit Court and reinstate Benningfield's claim for wrongful discharge.

---

4. *See Brown v. Diversified Decorative Plastics*, 103 S.W.3d 108, 113 (Ky.App.2003).

5. *Hines*, 813 F.Supp. at 552.

6. 117 N.M. 41, 868 P.2d 1266, 1274 (App. 1993).

7. *Gutierrez*, 868 P.2d at 1272–75.

8. *See also Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1093–94 (9th Cir.1990); *Lepore v. National Tool & Mfg. Co.*, 224 N.J.Super. 463, 540 A.2d 1296, 1298–99 (App.Div.1988); and *Reed v. Municipality of Anchorage*, 782 P.2d 1155 (Alaska 1989).