RENDERED: NOVEMBER 6, 2020; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1635-MR

TSI CONSTRUCTION, INC.                                                   APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.        HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NO. 19-CI-004341

LOUISVILLE AND JEFFERSON
COUNTY METROPOLITAN SEWER
DISTRICT                                                                 APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND JONES, JUDGES.

DIXON, JUDGE: TSI Construction, Inc. ("TSI") appeals from the order

dismissing its claims against Louisville and Jefferson County Metropolitan Sewer

District ("MSD") entered October 1, 2019, by the Jefferson Circuit Court. After

careful review of the briefs, record, and the law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On January 27, 2016, TSI, a contractor, and MSD executed a contract for the construction of a project identified as the Camp Taylor Sanitary Sewer Replacement 1A ("the Project"). The work performed under this contract required the excavation and removal of a large amount of rock. Article 2(B) of the contract, concerning the representations of the contractor, provides:

> The CONTRACTOR has visited and become familiar with the Project site and the local conditions under which the Project is to be constructed and operated, and the CONTRACTOR has performed such tests, if any, as are necessary to determine the conditions under which the Work will be performed[.]

(ROA[1] 73.) Regarding the time for contractor's performance, Article 6(A) states (in part):

> The CONTRACTOR shall commence the performance of this Contract on **February 8, 2016** and shall diligently continue its performance to and until final completion of the Project. The CONTRACTOR shall accomplish Substantial Completion of the Project on or before **June 10, 2017**.

(ROA 76) (emphasis in original).

The contract provided that certain information and materials would be supplied to TSI by MSD. The relevant portion of Article 8(A) states:

> MSD shall furnish to the CONTRACTOR, prior to the execution of this Contract, any and all written and

---

[1]  Record on Appeal.

-2-

tangible material knowingly in its possession concerning conditions below ground at the site of the Project. Such written and tangible material is furnished to the CONTRACTOR only in order to make complete disclosure of such material as being in possession of MSD and for no other purpose. By furnishing such material, MSD does not represent, warrant, or guarantee its accuracy either in whole or in part, implicitly or explicitly, or at all, and shall have no liability therefor.

(ROA 80.) Prior to the execution of this contract, MSD hired Stantec Consulting Services, Inc. ("Stantec") to perform a geotechnical investigation to identify potential construction problems. On January 8, 2013, Stantec issued a report concerning the area of the Project. This report was identified as a bid document, but MSD failed to provide a copy to TSI. Notably, the report "did not warn of any unusual conditions that could cause problems with construction in the underlying bedrock." (ROA 3.)

The contract also specifically addressed the procedures for claims by the contractor and alternative dispute resolution in Article 13. The pertinent portions of Article 13 provide:

The procedures set forth in this Article are designed to resolve contractual disputes prior to resorting to litigation as per KRS[2] 371.405. In the event that a court of law finds any provision void and unenforceable, the remaining provisions shall remain in force and in full effect. Claims by the CONTRACTOR against MSD are subject to the following terms and conditions:

---

[2] Kentucky Revised Statutes.

-3-

(A)  ARTICLE 13 COMPLIANCE:  In the event the CONTRACTOR seeks to make a claim for an increase in the Contract Price, as a condition precedent to any liability of MSD therefore, the CONTRACTOR shall strictly comply with the requirements of this Article 13 and such claim shall be made by the CONTRACTOR before proceeding to execute any additional or changed Work.  Failure of the condition precedent to occur shall constitute waiver by the CONTRACTOR of any claim for additional compensation;

(B)  NOTICE REQUIREMENT:  All CONTRACTOR claims, disputes and other matters in question against MSD arising out of or related to the Contract or the breach thereof, specifically including without limitation claims in respect to changes in the Contract Price or Contract Time, shall be initiated by a written notice of claim submitted to MSD.  Such written notice of claim shall be received by MSD no later than **ten (10) days** after the event, or the first appearance of the circumstances causing the claim, and the same shall set forth in detail all known facts and circumstances supporting the claim including the specific amount claimed.  The CONTRACTOR agrees and acknowledges that its **failure** to provide written notice of a claim as set forth herein shall constitute waiver of any claim for additional compensation or time extension related thereto;

. . . .

(D)  UNKNOWN CONDITIONS:  A claim for an increase in the Contract Price shall not be allowed for concealed or unknown conditions that may be encountered in the performance of the Work.  Whether the concealed or unknown conditions exists [sic] (1) below the surface of the ground, or

-4-

(2) the concealed or unknown conditions of an existing structure are at variance with the conditions indicated by the Contract, and are not reasonably discoverable by the CONTRACTOR's diligent inspections as required herein, or the concealed or unknown conditions are of an unusual nature differing materially from those ordinarily encountered in the area and generally recognized as inherent in the CONTRACTOR's Work of the character provided for in the Contract, such conditions shall <u>not</u> serve as the basis for a claim for an increase in the Contract Price.  The CONTRACTOR has expressly represented that prior to execution of this Contract, the CONTRACTOR has visited and become familiar with the Project site and local conditions under which the Project is to be constructed and operated, and the CONTRACTOR has performed such tests, if any, as are necessary to determine the conditions under which the Work will be performed, and the CONTRACTOR accepts the conditions of the Work site and has taken those conditions into account in entering into this Contract.  The CONTRACTOR's failure, whether or not inadvertent or reasonable, to properly perform its duties and obligations set forth hereinabove, shall not serve as the basis for any change in the Contract Price.  The CONTRACTOR's sole recourse in the event of concealed or unknown conditions that may be encountered in the performance of the Work which were not reasonably discoverable by the CONTRACTOR's diligent inspections as required herein, or are of an unusual nature differing materially from those ordinarily encountered in the area and generally recognized as inherent in the CONTRACTOR's Work of the character provided for in the Contract, shall be appropriate adjustment of the date for achieving Substantial Completion,

or, as applicable, Final Completion, pursuant to Paragraph 13(G);

. . . .

(J)  SUBMITTAL OF DOCUMENTATION:  No later than thirty (30) days after the date of the written notice of claim, the CONTRACTOR shall submit a formal written claim which shall include at least the following information:  (1) a concise statement of the occurrence(s) supporting the claim, dispute or other matter, and the relief sought; (2) identification of the facts giving rise to the claim, dispute or other matter; (3) the date the party discovered the occurrence(s); (4) a detailed schedule of values identifying all costs resulting from the claim, dispute or other matter; (5) documentation supporting the schedule of values; (6) identification of any impact the claim, dispute or other matter has on the critical path schedule; (7) all correspondence, internal memoranda, progress notes, and other documentation relating to the events which form the basis of the claim, dispute or other matter.  Additional information or documents requested by MSD shall be submitted to MSD within ten (10) days after the written request.  The failure to provide a claim as set forth herein, or failure to provide such other documents or information requested by MSD within ten (10) days after the written request shall constitute a waiver of any claim for additional compensation or time extension related thereto[.]

(ROA 84-85, 87) (emphasis in original) (footnote added).

Soon after it began its work in February 2016, TSI discovered that the depth to the bedrock was considerably less than indicated on MSD's plans for the Project.  Consequently, TSI was required to remove more of the underlying

-6-

bedrock than had been expected. TSI claims that it gave notice to MSD at the Project meetings about this issue. Nonetheless, TSI achieved substantial completion of the Project, recognized by MSD, on October 6, 2017.

On February 8, 2018, TSI advised MSD via letter that it would be filing a claim for additional and unanticipated costs incurred to excavate rock due to the unforeseen conditions encountered. Its letter asserted, "TSI has provided notice to MSD with notices of its intent to file a claim due [to] the irregularities in the rock excavation versus information provided at bid time, as reflected in the Project Progress Meetings." (ROA 98.) TSI hired Hagerty Engineering, Inc. ("Hagerty") to investigate the rock conditions it encountered. Hagerty authored a report dated September 21, 2018, finding, "the mechanical excavation problems could not have been known by the contractor in advance through methods reasonable in scope for preparation of a construction bid." (ROA 6, 108). On November 26, 2018—more than nine months after it advised MSD it would be filing a claim—TSI submitted its formal claim document to MSD along with the Hagerty report and documentation of its additional and unanticipated costs.

By letter dated December 20, 2018, MSD denied TSI's claim. MSD asserted that TSI did not preserve its claim because it failed to timely file a formal claim, resulting in its waiver. TSI disputed MSD's denial of its claim and requested executive negotiation under the contract. MSD refused, stating that

Article 13 of the contract no longer applied since TSI failed to preserve, and thereby waived, its claim.

On July 18, 2019, TSI filed the instant action, alleging breach of contract and breach of the implied obligation of good faith and fair dealing. MSD moved the trial court to dismiss TSI's complaint for failure to state a claim upon which relief may be granted. After the matter was fully briefed, the trial court entered its order dismissing TSI's claims. This appeal followed.

## STANDARD OF REVIEW

A trial court should only grant a motion to dismiss if "it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Benningfield v. Petit Envtl., Inc.*, 183 S.W.3d 567, 570 (Ky. App. 2005) (citation omitted). In considering the motion to dismiss, the truth of the allegations in the complaint is assumed and the pleadings are to be liberally construed in a light most favorable to the plaintiff. *Id.* This determination requires no factual findings and is purely a question of law. *Id.*

## ANALYSIS

A fundamental rule of contract law is that a written agreement will be enforced according to its terms. *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 341 (Ky. App. 2001). On appeal, TSI begins its argument by attacking MSD's failure to comply with the portion of Article 8 quoted herein, as

well as asserting that the issues concerning whether TSI's notice of claims was timely or sufficient are jury questions. The heart of this matter, however, is whether the trial court erred in dismissing TSI's claims against MSD as unenforceable, having been waived pursuant to the terms of the contract, and more specifically under Article 13. Taking TSI's allegations in its complaint as true, it either provided or attempted to provide notice of its claims to MSD on or before February 2, 2018. Yet, it is undisputed that TSI failed to make any formal *written* claim until November 26, 2018, more than nine months later. Article 13(J) specifically requires that a formal *written* claim be submitted within thirty days of the written notice of claim. TSI's failure to comply with Article 13(J) of the parties' contract, therefore, constitutes waiver of its claims.

In an effort to circumvent the written notice requirement, however, TSI asserts that it was impossible to comply with the 10-day and 30-day limits in the contract, citing *Louisville and Jefferson County Metropolitan Sewer District v. T+C Contracting, Inc.*, 570 S.W.3d 551 (Ky. 2018), for the proposition that contractual time limits must be reasonable. It further maintains that the reasonability of such limits is a question of fact for jury determination.

Herein, TSI acknowledged in its complaint that "[a]lmost as soon as it began its work, [it] discovered that the depth to the bedrock was considerably less than was indicated on MSD's plans for the Project, requiring TSI to have to

remove more of the underlying bedrock than anticipated." (ROA 4). Yet, TSI did not comply with the written requirement of notice to MSD that it intended to make a claim for additional work until February 2018, finally submitting its actual claim in November 2018, well after TSI's work on the Project was concluded.

Despite TSI's reliance on *T+C*, the Court therein determined similar contractual provisions to those here were ultimately upheld. Articles 13(A) and (J) of the *T+C* contract were similar to Articles 13(B) and (J), respectively, of the contract herein. In *T+C*, a contractor sued MSD, claiming MSD's contractual provision mandating the chief engineer's determination to be conclusive of any dispute—and thereby wholly prohibiting further administrative/judicial review—violated the KFCA.[3] On appeal, this Court agreed and found the provision invalid and the entirety of Article 13 null and void. The Supreme Court, however, while agreeing the procedural provision was void, severed that provision from the remainder of Article 13. The Court further held, "Contractual provisions . . . that afford the contractor the opportunity to continue asserting a dispute before a neutral adjudicator, so long as certain preservation requirements are complied with, do not run afoul of KRS 371.405(2)(a)." *Id*. at 562. Finally, the Court determined:

> Admittedly, there are several issues that could
> conceivably be argued as being issues of material fact
> that would preclude summary judgment—whether the

---

[3] The Kentucky Fairness in Construction Act, KRS 371.400 *et seq*.

-10-

correspondence sent by T+C to MSD constitutes a "notice of claim" sufficient to satisfy Subsection (A) of Article 13; whether that correspondence complied with the time requirements set out by Subsection (A); etc. *However, what cannot be argued as being an issue of material fact, and what resolves all other issues of material fact that would preclude the granting of summary judgment in favor of MSD, is the failure of T+C to file a formal written claim thirty days after filing anything that could be argued as being written notice of a claim.* The trial court's ruling was correct in this regard.

*Id*. at 569 (emphasis added). Thus, herein, and as in *T+C*, TSI's failure to comply with the contractual provisions necessary for it to preserve its claim is fatal and was properly disposed of via summary judgment.

## CONCLUSION

Therefore, and for the foregoing reasons, the order entered by the Jefferson Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Gerald L. Stovall
Louisville, Kentucky

BRIEF FOR APPELLEE:

Adam T. Goebel
Angela S. Fetcher
Louisville, Kentucky