RENDERED: JULY 2, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0042-MR

RONALD K. REEVES                                                APPELLANT


                     APPEAL FROM WARREN CIRCUIT COURT
v.                 HONORABLE STEVE ALAN WILSON, JUDGE
                        ACTION NO. 19-CI-00885


STEVEN W. REEVES; DENNIS E.
REEVES; LEON TARTER; AND
REEVES FAMILY LLC                                   APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: DIXON, KRAMER, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: This appeal concerns the liquidation of a family-owned business and, more specifically, the sale of certain company assets. Ronald K. Reeves seeks review of the November 25, 2019, order of the Warren Circuit Court denying his motion to dismiss or hold in abeyance and granting Reeves Family

LLC's motion for summary judgment and ordering the sale of real property via a referral to the Master Commissioner. We reverse and remand.

Reeves Family LLC (the Company) is a manager-managed limited liability company that was formed on December 4, 2000, with its principal office in Louisville. Steven W. Reeves (Steve) was the Company's managing member and the registered agent. The members were three brothers: Steve, Dennis E. Reeves (Dennis), and Ronald K. Reeves (Ronald).[1] Each member had a one-third ownership interest in the Company. The Company owned real estate either solely or jointly with Leon Tarter (Tarter). It solely owned property at 2015 Barberry Court and 3249 Cemetery Road in Bowling Green (Warren County). And it jointly held property with Tarter on Girkin Road and Memphis Junction Road in Bowling Green and on Robey Street in Franklin (Simpson County).

The members held a special meeting of the Company on June 17, 2019, pursuant to notice to discuss and vote on whether to dissolve the Company and wind up its affairs, including selling the real estate it owned and jointly owned.[2] Present at the meeting were counsel for the Company as well as Steve and Dennis. Ronald was not present but appeared by counsel. Section 7.1.2 of the

---

[1] Their father, Garland Reeves, was the original managing member of the Company. He passed away in 2005.

[2] Pursuant to the deposition testimony, this was apparently prompted by the members' ages and out-of-town residencies, making oversight of the properties a problem for them.

Company's Operating Agreement states that a vote of members holding 51% or more of the Company interests is required before it may be dissolved. Steve and Dennis both voted to dissolve the Company, and counsel for Ronald concurred. Steve, as the managing member, indicated at the meeting that he would instruct counsel for the Company to file a petition to seek a judgment and order to have the Company's real estate sold by the Master Commissioner. On June 25, 2019, the Company filed a complaint in the Warren Circuit Court seeking to liquidate the Company by judicial sale of real estate wholly or jointly owned in both Warren and Simpson Counties. In their entries of appearance, Dennis, Steve, and Tarter waived notice of further proceedings and consented to the entry of orders and a final judgment as sought by the Company.

Ronald, however, contested the complaint and filed an answer and cross-claim. In his answer, Ronald raised the defenses of Kentucky Rules of Civil Procedure (CR) 8.03 as a bar to the Company's complaint and that pursuant to Article X of the Operating Agreement, the members were to attempt to negotiate and then mediate any disputes related to the Company prior to filing suit. He also stated that a Special Commissioner should be appointed to conduct the sale of the real property and that the proposed judicial sale did not satisfy Article 7.3 of the Operating Agreement that liquidation should be done in an orderly fashion.

In Count I of his cross-claim, Ronald alleged that Dennis and Steve owed him a fiduciary duty to act with utmost care, honesty, undivided loyalty, and fidelity in the Company's business dealings. He believed that one of the properties that had been appraised at $1.1 million was going to be sold well below the fair market value, causing him to suffer damages. In Count II, Ronald alleged that Tarter aided and abetted Steve and Dennis in breaching their fiduciary duties. In Count III, Ronald addressed his request that the Company engage a realty firm to liquidate the real estate, noting that Steve had indicated at the special meeting that he would be seeking liquidation via a Master Commissioner's sale. Ronald believed that a judicial sale would return a lower price than a private sale, which would constitute a breach of fiduciary duties by Steve and Dennis. In Count IV, Ronald alleged that he was owed approximately $100,000.00 in distributions from the sale of real estate, which was being withheld by Steve and Dennis. This, he claimed, also constituted a breach of their fiduciary duties to him. Ronald sought compensatory and punitive damages as a result of the allegations in his cross-claim. The other parties contested Ronald's claims in their answers.

On August 2, 2019, the Company filed a notice to take the depositions of the parties later that month. These depositions were later renoticed for October 16, 2019. The record contains the depositions of Steve, Dennis, and Tarter.

On October 24, 2019, Ronald filed a motion to dismiss or to hold in abeyance and require arbitration pursuant to the Operating Agreement. Article X of the Operating Agreement provides for alternative dispute resolution (ADR) and binding arbitration, and it sets forth the procedure for mediation. It provides in part as follows:

> 10.1. **Agreement to Use Procedure.** The Members have entered into this Agreement in good faith and in the belief that it is mutually advantageous to them. It is with that same spirit of cooperation that they pledge to attempt to resolve any dispute amicably without the necessity of litigation. Accordingly, they agree that if any dispute arises between them relating to this Agreement (the "Dispute"), they will first utilize the procedures specified in this Article X (the "Procedure") before any additional proceedings.

> 10.2. **Initiation of Procedure.** The Member seeking to initiate the Procedure (the "Initiating Member") will give written notice to the other Members. The notice must describe in general terms the nature of the dispute and the [I]nitiating Member's claim for relief. Additionally, the notice must identify one or more individuals with authority to settle the dispute on the Member's behalf. The Members receiving notice (the "Responding Member," whether one or more) will have five business days within which to designate by written notice to the Initiating Member, one or more individuals with authority to settle the dispute on the Member's behalf. The individuals so designated will be known as the "Authorized Individuals." The Responding Member may authorize himself or herself as an Authorized Individual. The Initiating Member and the Responding Member will collectively be referred to as the "Disputing Members" or individually as "Disputing Member."

By instructing the Company's counsel to file this action, Ronald argued that Steve and Dennis violated the ADR procedures in Article X. The Company, likewise, violated the Operating Agreement by filing the action prior to following the ADR procedures.

Also on October 24, 2019, the Company filed a motion for summary judgment and for the entry of an order of sale by the Master Commissioner, as well as a response to Ronald's motion to dismiss or hold in abeyance. The Company argued that the Operating Agreement required mediation, not arbitration. It also argued that there was no dispute between the members prior to the filing of the action that would bring Article X into relevance, as neither Ronald nor his counsel raised any objection to Steve's statement at the conclusion of the special meeting that he would instruct the Company's counsel to file this petition to seek a judicial sale. The procedures under Article X were not invoked until October 15, 2019, more than three months after the petition was filed. In addition, the Operating Agreement gave Steve, as the managing member, the power to sell the Company's assets without any type of limitation. As to its motion for summary judgment, the Company stated that there were no genuine issues of material fact as supported by deposition testimony, noting that Ronald refused to be deposed. It also argued that Ronald's request for a Special Master Commissioner would not address his

concern about notice requirements and his desire to achieve the maximum sales price for the real estate.

In his response, Tarter supported the Company's motion for summary judgment and opposed Ronald's motion. He argued that he was not a member of the Company and was not, therefore, bound by any agreements contained in the Operating Agreement. He also argued that he was entitled to the sale requested by the Company.

In reply, Ronald stated that the Company, Steve, and Dennis were on notice of a dispute prior to the filing of the action. Once he knew of Steve's plan to sell the real estate via a judicial sale, Ronald communicated his objection, citing a series of emails beginning June 24, 2019, between the attorneys related to this issue. He stated that their claim that he did not raise the issue prior to October 15th was false. Ronald also argued that although Tarter was not a member of the Company, and therefore not bound by the Operating Agreement, this did not relieve Steve and Dennis of their obligations under Article X. In the event the court denied his motion, Ronald argued that a genuine issue of material fact existed as to whether the judicial sale was being initiated in good faith, which would preclude summary judgment. He wanted the opportunity to conduct discovery to support his claims related to bad faith.

The parties argued their respective positions before the court on November 4 and 18, 2019. And on November 25, 2019, the circuit court entered a summary judgment in favor of the Company and denied Ronald's motion to dismiss or hold in abeyance. The court found that there were no genuine issues of material fact with respect to mediation, that no dispute existed when the action was initiated, and that the managing member had the power to seek a judicial sale. Because the real property could not be divided without materially impairing its value, the court ordered that it was to be sold as a whole by the Master Commissioner of Warren Circuit Court at a judicial sale. This appeal by Ronald now follows.

On appeal, Ronald argues that the circuit court erred in denying his motion to dismiss and that summary judgment was premature. The appellees dispute these arguments in their respective briefs.

Ronald's first argument addresses whether the circuit court erred in denying his motion to dismiss or hold the case in abeyance to permit the parties to follow the ADR procedures in Article X of the Operating Agreement. Our standard of review of a motion to dismiss filed pursuant to CR 12.02 for failure to state a claim upon which relief may be granted is set forth in *Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 570 (Ky. App. 2005):

> A motion to dismiss should only be granted if "it appears the pleading party would not be entitled to relief under

-8-

any set of facts which could be proved in support of his claim." *Pari-Mutuel Clerks' Union v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky. 1977). When ruling on the motion, the allegations in "the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Gall v. Scroggy*, 725 S.W.2d 867, 868 (Ky. App. 1987). In making this decision, the trial court is not required to make any factual findings. *James v. Wilson*, 95 S.W.3d 875, 884 (Ky. App. 2002). Therefore, "the question is purely a matter of law." *Id*. Accordingly, the trial court's decision will be reviewed *de novo*. *Revenue Cabinet v. Hubbard*, 37 S.W.3d 717, 719 (Ky. 2000).

With this standard in mind, we shall review Ronald's argument.

At the outset, we recognize that the circuit court and the appellees have all either found or argued that no dispute existed among the parties prior to the filing of the petition in this case and that, therefore, the ADR procedures did not apply.[3] Our review of the record, however, reveals that a dispute certainly existed as to how the Company property was to be sold prior to the filing of the lawsuit on June 25, 2019. We shall now set forth the evidence showing that this dispute existed and should have been known to all parties.

---

[3] The following exchange took place in Steve's deposition:

> Q: Now after this was passed and these minutes approved, did you or the LLC, the company, ever receive any written notice pursuant to article ten of the partnership agreement that Ron disputed the action taken?
>
> A: No.

The May 31, 2019, call of special meeting from Steve to Ronald and Dennis stated:

> Pursuant to § 5.2 of the Reeves Family LLC Operating Agreement, effective December 22, 2000 (the "Operating Agreement"), and the authority granted by Kentucky Revised Statutes § 275.175(6), the undersigned Managing Member calls a special meeting of the Members of the Reeves Family LLC (the "Company") to be held at the law offices of English, Lucas, Priest & Owsley, LLP, 1101 College Street, Bowling Green, Kentucky, on June 17, 2019 at 2:00 p.m. CDT. The purpose of the meeting will be to consider and vote upon dissolution and winding up of the Company and liquidation of its assets, including but not limited to real estate wholly owned by the Company and real estate owned in partnership with Leon Tarter. The Members are hereby directed to Article VII of the Operating Agreement to review provisions governing the dissolution and liquidation of the Company. The Members will discuss and transact such other business as may properly come before the meeting.

This notice did not contain any information about how the real property was to be sold, only that the Company assets were to be liquidated. Not until after the vote to liquidate the Company passed did Steve express his decision to sell the property via a judicial sale.

Thereafter, a series of email messages was exchanged between counsel for the parties:

- Email from Sam Lee (counsel for Ronald) to Nathan Vinson (counsel for the Company) dated June 24, 2019, 1:15 p.m.:

Nathan – We have had the opportunity to discuss the liquidation of the Reeves Family LLC's assets with Ron. He is concerned that a judicial sale will generate lower sales prices for the properties than could be obtained via a private auction. A private auction house will utilize their experience and contacts to cultivate as much interest as possible in the properties, as opposed to the master commission[er] merely running the statutorily required notice. While there will likely be additional expenses with a private auction firm, Ron feels that the increased sales revenue will more than account for the difference. His goal – which I'm sure is shared by Steve and Dennis – is to obtain the highest possible sales price for the LLC's real properties.

Please consider this a formal request to liquidate the LLC's real property via private auction rather than proceeding with the judicial sale. Ron agrees to cooperate in any manner required to facilitate maximizing the value of the LLC's assets. We would suggest engaging Kurtz Auction and Realty. They have an excellent reputation and serve the Bowling Green area.

- Email from Vinson to Lee dated June 24, 2019, 2:15 p.m.: "Thank you, Sam. Unfortunately, all other parties still want to file the petition, but of course, I will consult with them."

- Email from Lee to Vinson dated June 24, 2019, 2:20 p.m.: "Thanks. I would appreciate you letting me know their decision prior to filing the petition."

- Email from Vinson to Lee dated June 24, 2019, 2:45 p.m.: "Will do. I have forwarded your e-mail to them."

- Email from Vinson to Lee dated June 25, 2019, 9:36 a.m.:

    Sam,

    The other members and the joint owner still want to file the petition. I should have it e-filed today.

    Will you accept service on behalf of Ron?

    Thanks,
    Nathan

- Email from Lee to Vinson dated June 25, 2019, 3:05 p.m.:

    Nathan – Thanks for getting back to me. Ron is disappointed . . . in the decision to move forward with the judicial sale. Based on the circumstances, Ron believes that these actions are being taken with the intent to reduce the value of the company assets to allow Steve, Dennis, and/or Leon Tarter to purchase these properties at a judicial sale for a greatly reduced basis. There are a handful of actions that have led Ron to this assumption.

    Firstly, judicial sales have historically generated lower sales prices compared to actual fair market value. This is why they are generally considered a last resort to liquidate assets. The justification for using this method – that Ron would not cooperate – is unpersuasive. Not only does Ron agree with the liquidation, but even if he didn't Steve and Dennis possess the necessary voting interests to list the properties for private sale. Investors as sophisticated as Steve, Dennis, and Mr. Tarter undoubtedly understand that the avenue they are pursuing will lead to a lower sales price. Ron believes that the only logical conclusion is that it is their intent to do so.

    Secondly, Steve and Dennis explicitly ensured that there would be no further distributions until after the sales. Upon obtaining the full financial records, we discovered the LLC is holding nearly $500,000 in cash assets

-12-

including funds from prior sales. It is difficult to imagine that there are sufficient pending liabilities to justify such a cash position. Ron believes that the purpose for holding his share of prior sales proceeds and foregoing additional disbursements is intended to deny him access to funds that he could use to bid against his partners at the judicial sale.

Thirdly, Ron had 970 Lovers Lane appraised, and the appraiser valued the property at $1.1 million. This is more than double the sales price of the 2018 sale between the LLC/Leon Tarter and an LLC that is owned by Leon Tarter. In this transaction, the LLC sold company property far below the market value to benefit an interested party. This demonstrates that Dennis's and Steve's previous choices have not procured a fair market return on company property. It further shows that the property should be marketed and sold by a disinterested professional in the industry. We have attached a copy of the appraisal for your review.

Based on the foregoing, Ron demands that the properties be liquidated via a neutral private realty firm. The hope is that a real estate professional can curtail any notion of a systematic, intentional, undervaluation of the remaining property. If the partners proceed with a judicial sale, Ron will consider this a breach of Dennis's and Steve's fiduciary duties and will consider all options at his disposal.

- Email from Vinson to Lee dated June 25, 2019, 4:26 p.m.: "Thank you, Sam. I will forward this to Steve and Dennis as counsel for the LLC."

After the Company filed the petition, Ronald specifically cited to

Article X of the Operating Agreement as a defense in his answer, stating that the

-13-

failure to abide by the provision of the article barred the complaint. A few months later, the following series of emails were exchanged by counsel for the parties:

- Email from Lee to Mark Alcott (counsel for Dennis and Steve), Paul Lawless (counsel for Tarter), and Charles English (counsel for the Company) dated October 10, 2019, 1:33 p.m.:

    Confidential Settlement Discussion Pursuant to KRE 408

    Counsel –

    We believe it would be beneficial to discuss a settlement of this matter before we get too far down the road. Ron is, and has always been, in agreement with liquidating the remaining assets and winding up the company. His request was that it be done in [a] commercially reasonable fashion rather than at the courthouse steps. For reasons that remain unclear, this request was rejected.

    In any event, Ron would be willing to release his counterclaims in return for an agreement to sell the remaining properties at auction with a qualified disinterested auction firm, to be completed by a certain date. I hope the parties agree that this would almost certainly result in higher sales prices and put more money in everyone's pocket.

    I look forward to your responses.

- Email from Lee to Alcott, Lawless, and English dated October 15, 2019, 3:35 p.m.: "Insofar as we are at least discussing the possibility of a resolution, I suggest that we postpone the depositions. If anything, they may

-14-

be counter-productive to reaching an agreement.  Please advise if this is agreeable."

- Email from Lawless to Lee, Alcott, and English dated October 15, 2019, 4:05 p.m.:

> I have now spoken with Attorneys English and Alcott this afternoon following my conversation with you.  The collective judgment is to move forward with the depositions tomorrow as scheduled.  However, as you discussed with Mark today, we are more than willing to keep the lines of communication open as to settlement.
>
> I look forward to seeing everyone at ELPO tomorrow morning.

- Email from Lee to Lawless, Alcott, and English dated October 15, 2019, 4:22 p.m.:

> In that case my client intends to enforce Article 10 of the Reeves Family LLC operating agreement which requires mediation prior to litigation, as reserved in the Answer. Ron will not participate in the depositions or discovery until the mediation procedures have been observed.  If necessary, we will file the appropriate motion to compel the arbitration in the agreement.

While this exchange occurred after the petition was filed, it supports the fact that Ronald's dispute was raised prior to its filing.

Based upon these communications, the fact that a dispute existed between the parties prior to the Company's filing of the instant petition is clear, and the circuit court's finding that no dispute existed at the time it was initiated is

simply not supported by the record. We note that the Operating Agreement does not require that Article X must be invoked prior to the filing of litigation; it merely states that a dispute must exist. And the record supports Ronald's claim that a dispute existed before the Company filed the petition in this case.

However, we do not believe that this supports the dismissal of the petition. Rather, the circuit court should have granted the alternative motion and held the petition in abeyance while the parties pursued the ADR procedures set forth in Article X of the Operating Agreement.

Based upon this holding, the circuit court's grant of summary judgment in this case was premature and must be reversed. As such, we need not address Ronald's bad faith and breach of fiduciary duty claims. If necessary, these issues may be revisited at a later date.

For the foregoing reasons, the order of the Warren Circuit Court granting the Company's motion for summary judgment and denying Ronald's motion to dismiss or hold in abeyance is reversed, and this matter is remanded to permit the parties to mediate the dispute as to how the real property should be sold pursuant to Article X of the Company's Operating Agreement.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Samuel B. Lee
Owensboro, Kentucky

BRIEF FOR APPELLEES STEVEN
W. REEVES AND DENNIS E.
REEVES:

Mark D. Alcott
Bowling Green, Kentucky

BRIEF FOR APPELLEE LEON
TARTER:

Paul T. Lawless
Ian A. Loos
Bowling Green, Kentucky

BRIEF FOR APPELLEE REEVES
FAMILY LLC:

Charles E. English
Joye Beth Spinks
Bowling Green, Kentucky