RENDERED: JUNE 4, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0282-MR

MICHAEL SCHELL　　　　　　　　　　　　　　　　　　APPELLANT

v.　　　　APPEAL FROM ANDERSON CIRCUIT COURT
　　　　HONORABLE CHARLES R. HICKMAN, JUDGE
　　　　ACTION NO. 19-CI-00007

TROY L. YOUNG AND CITY OF
LAWRENCEBURG, KENTUCKY　　　　　　　　　　　　APPELLEES

AND　　　　　　　　　NO. 2020-CA-0300-MR

ROBERT T. HUME　　　　　　　　　　　　　　　　　　APPELLANT

v.　　　　APPEAL FROM ANDERSON CIRCUIT COURT
　　　　HONORABLE CHARLES R. HICKMAN, JUDGE
　　　　ACTION NO. 19-CI-00008

TROY L. YOUNG AND CITY OF
LAWRENCEBURG, KENTUCKY　　　　　　　　　　　　APPELLEES

OPINION
AFFIRMING IN PART,
REVERSING IN PART, AND REMANDING

** ** ** ** **

BEFORE: ACREE, DIXON, AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: The day after being sworn in as Mayor of Lawrenceburg, Kentucky, Troy Young terminated without cause the employment of Lawrenceburg Chief of Police Michael Schell and Lawrenceburg City Clerk/City Administrator Robert T. Hume. Schell and Hume brought separate suits contesting their terminations in the Anderson Circuit Court, but each case was dismissed for failure to state viable claims upon which relief may be granted. Schell and Hume each appealed.[1]

We reverse in part because Young, as Mayor, did not have the discretion to terminate these two city officers' employment without cause; Lawrenceburg Ordinances gave its Chief of Police and City Clerk two-year terms, thereby removing the holders of those offices from the Mayor's otherwise broad discretionary ability to terminate city employees, and declaratory relief is available

---

[1] Because the appeals have common facts and issues of law we have elected to resolve both in this combined Opinion. We have considered the parties' extensive arguments and citations to authority but will discuss only the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant.

for such violations.  However, we affirm in part because some of the other claims brought by Schell and Hume are not viable.

*Factual and Procedural History*

Schell was appointed Chief of the Lawrenceburg Police Department in March 2018.  Young was elected Mayor of Lawrenceburg in early November 2018.  Later that month, Mayor-Elect Young sent Schell a one-sentence letter stating in its entirety:  "Your services will no longer be needed as of January 1, 2019."  In early December 2018, Hume was appointed to another term as Lawrenceburg's City Clerk/City Administrator.

In late December 2018, Schell's counsel sent Young a letter opining that terminating Schell in January 2019 without cause would be improper for several reasons, one of which was a belief that Schell was entitled to serve a full two-year term under Lawrenceburg Ordinance § 34.01,[2] which provides in relevant part that "[t]he Chief of Police shall be appointed by the Mayor at the first regular meeting after the new members of the City Council take office, for a term of two years and until his successor is appointed."  Ordinance § 30.23(A) similarly

---

[2] The Lawrenceburg City Ordinances (Ordinance(s)) are liberally quoted in the record and may be found at https://lawrenceburgky.org/city-ordinances/ (last visited Feb. 25, 2021), which takes a viewer to Lawrenceburg, Kentucky, American Legal Publishing Corporation, https://codelibrary.amlegal.com/codes/lawrenceburgky/latest/overview (last visited Feb. 25, 2021).  Of course, "[a] court may properly take judicial notice of public records and government documents, including public records and government documents available from reliable sources on the internet." *Polley v. Allen*, 132 S.W.3d 223, 226 (Ky.App. 2004) (footnote omitted).

provides that "[t]he [City] Clerk shall be appointed by the Mayor at the first regular meeting after the new members of the City Council take office, for a term of two years and until his successor is appointed."

Undeterred, on January 2, 2019, one day after taking office, Mayor Young terminated Schell and Hume. The termination letters for each are essentially identical, except for the differences noted in brackets:

> Section 30.21(A)[3] of the Lawrenceburg Code authorizes me, as mayor, to appoint all non-elected city officers, including Chief of Police [City Clerk and City Administrator], subject to approval by the City Council. On January 14, 2019, I will offer my choice of candidate for Chief of Police [City Clerk/City Administrator] to the City Council.

> Section 30.21(B) of the Lawrenceburg Code authorizes me to remove the Chief of Police [City Clerk/City Administrator] at will, but requires that I give a reason for removal. Because I believe that morale at the Lawrenceburg Police Department [city hall] would be adversely affected by the continued presence of a Chief of Police [any non-elected officer] who is not being

[3] Ordinance § 30.21 provides:

> (A) All non-elected city officers shall be appointed by the Mayor and all such appointments shall be with approval of Council.

> (B) The officers may be removed by the Mayor at will *unless otherwise provided by statute or ordinance*. Upon removal of a non-elected officer at will, the Mayor shall give the officer a written statement setting forth the reason or reasons for the removal. However, this requirement shall not be construed as limiting in any way the at-will dismissal power of the executive authority.

(Emphasis added.)

-4-

retained, your removal from the position of Chief of Police [City Clerk/City Administrator] is effective immediately.

A week later, Schell filed a ten-count complaint against Young, individually and in his official capacity, and Lawrenceburg. On the same date and via the same counsel, Hume filed a seven-count complaint against the same defendants.

Schell and Hume each alleged that their terminations violated their ordinance-based right to a two-year term of office (for Schell, Ordinance § 34.01 and for Hume, Ordinance § 30.23(A)) and Ordinance § 30.35(A), which provides in relevant part that the "policies and procedures on file in the City Clerk's Office is [sic] adopted by reference and shall be the system of human resources administration for the city." Specifically, Lawrenceburg's Personnel Policies and Procedures (PPP) provides in relevant part in its foreword that "all references to employee shall include non-elected officers," and PPP Part III(A)(4) provides that "[u]nless serving a probationary period, an employee may be dismissed from the city service for just-cause only." In short, each asserted they could only have been properly dismissed, at least during their two-year terms, for cause.

Additionally, Schell alleged three police officer-centered claims that his termination violated: (1) Ordinance § 34.03, which provides in relevant part that "[n]o member of the police department shall be removed from the department

or reduced in rank upon any reason except inefficiency, misconduct, insubordination or violation of law, or violation of the rules adopted for the department"; (2) Kentucky Revised Statutes (KRS) 95.450(2), which provides in relevant part that "no member of the police . . . department in cities listed on the registry pursuant to subsection (9) of this section . . . shall be . . . dismissed . . . for any reason except inefficiency, misconduct, insubordination or violation of law or of the rules adopted by the legislative body"; and (3) KRS 15.520, which is colloquially known as the police officer bill of rights and provides process for discipline and dismissal for misconduct.

Schell and Hume further alleged wrongful termination, tortious interference with the ability to earn money, outrage/intentional infliction of emotional distress (IIED), and that each plaintiff's dismissal was an arbitrary exercise of power in violation of Section 2 of the Kentucky Constitution, which provides that "[a]bsolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

Schell and Hume each sought punitive damages, declaratory relief, reinstatement, back pay, damages, and attorney fees. They attached their respective January 2, 2019 dismissal letters and Lawrenceburg's PPP to their complaints. Schell also attached the Lawrenceburg Police Department's grievance procedures.

In lieu of an answer, Lawrenceburg and Young jointly filed motions to dismiss both complaints. They argued: the claims against Young in his official capacity were redundant of claims against Lawrenceburg, Young was entitled to qualified official immunity, and none of the statutes and ordinances relied upon by Schell and Hume altered the at-will nature of their employment. They further argued the wrongful termination, tortious interference with the ability to earn money, IIED, and Section 2 of the Kentucky Constitution claims failed as a matter of law; punitive damages were unavailable; and neither plaintiff was entitled to attorney fees.

Schell and Hume each filed a lengthy response. Attached to Schell's response were two pre-termination letters not attached to his complaint or the motion to dismiss. First, Schell attached the November 2018 one-sentence letter from Young informing Schell that his services "will no longer be needed as of January 1, 2019." Second, Schell attached the responsive December 29, 2018, letter from his counsel to Young opining as to why counsel believed it would be improper for Young to dismiss Schell. The circuit court did not explicitly exclude the letters from its consideration of the motion to dismiss Schell's complaint.

In February 2020, over ten months after briefing concluded, the circuit court issued an opinion and order in each case granting each motion to dismiss each complaint in its entirety. The circuit court found there to be "no support for

-7-

the conclusion that Schell [or Hume] had a contract or a guarantee of a two-year term of employment, as he was subject to at will removal in the discretion of the Mayor[]" and concluded that "Kentucky provides for no private right of action to enforce an ordinance" so "the alleged violations of City ordinances are hereby dismissed for failure to state a claim upon which relief can be granted."

The circuit court also dismissed Schell's police officer-related claims, concluding that KRS 95.450 did not apply to Lawrenceburg and KRS 15.520 did not apply because no complaints were filed against Schell.

The circuit court dismissed Schell's and Hume's claims regarding violation of Section 2 of the Kentucky Constitution because "there is no private right of action for violation of the Kentucky Constitution."

The circuit court found the wrongful termination claims failed because neither Schell nor Hume had shown that "his removal was contrary to any statute, ordinance or constitutional provision[,]" and the tortious interference with the ability to earn money claims failed because "this cause of action does not exist in Kentucky[.]"

The circuit court also ruled that "[m]ere termination from employment" was insufficient to constitute actionable IIED and punitive damages may not be imposed upon a municipality.

The circuit court ruled that the official capacity claims against Young in both cases were redundant as they were "essentially a claim against the City, the entity he represents" and Young was entitled to qualified official immunity for the individual capacity claims against him because there was "no indication" that his firing of either plaintiff "was not done in good faith."

Schell then filed appeal 2020-CA-0282-MR; Hume filed appeal 2020-CA-0300-MR.

On appeal, Hume and Schell do not contest the dismissal of: their official capacity claims against Young, their tortious interference with the ability to earn money claims, and their requests for attorney fees. Consequently, they have waived any possible errors in the dismissal of those claims.

Likewise, Schell does not actively contest the dismissal of his IIED claims, stating only that he "presented viable claims for . . . intentional infliction of emotional distress[.]" Such a terse, conclusory assertion wholly unaccompanied by meaningfully developed argument or citation to authority is insufficient to merit appellate relief. *See Koester v. Koester*, 569 S.W.3d 412, 414 (Ky.App. 2019); *Jones v. Livesay*, 551 S.W.3d 47, 52 (Ky.App. 2018). Thus, Schell has waived any claim of error involved in dismissing that claim, though Hume has not.

*Standard of Review*

As our Supreme Court explained:

A motion to dismiss for failure to state a claim upon which relief may be granted admits as true the material facts of the complaint. So a court should not grant such a motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved . . . . Accordingly, the pleadings should be liberally construed in the light most favorable to the plaintiff, all allegations being taken as true. This exacting standard of review eliminates any need by the trial court to make findings of fact; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief? Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue de novo.

*Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (internal quotation marks, citations, and footnotes omitted).

Because Kentucky Rule of Civil Procedure (CR) 12.02 mandates that a motion to dismiss is converted to a motion for summary judgment if matters outside the pleadings are presented to, and not excluded by, the circuit court, we must first determine the impact of the correspondence between Schell's counsel and Young written after Young was elected mayor but before he took office.

Conversion from a motion to dismiss to a motion for summary judgment occurs even if the extraneous matters are submitted by the non-moving party. *See, e.g.*, *Baker v. Campbell County Bd. of Educ.*, 180 S.W.3d 479, 480 n.1 (Ky.App. 2005). However, there are exceptions to the conversion rule. For

-10-

example, no conversion occurs if the circuit court considers matters of public record. *See, e.g.*, *Netherwood v. Fifth Third Bank, Inc.*, 514 S.W.3d 558, 563-64 (Ky.App. 2017). Federal courts construing their counterpart to CR 12.02 have held that a court may consider, among other things, "matters incorporated by reference or integral to the claim" without converting a motion to dismiss to a motion for summary judgment. 5B CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2020). "To be integral to a complaint, the plaintiff must have (1) actual notice of the extraneous information and (2) relied upon the documents in framing the complaint." *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks, brackets, and citations omitted).

Here, Schell had actual notice of the letters since one was addressed to him and the other was written by his counsel and he attached the letters to his response to the motion to dismiss. There is no dispute as to the letters' authenticity. Moreover, Schell relied upon the letter from his counsel to Young in his attempt to show that Young was not acting in good faith when he fired Schell, thereby boosting Schell's IIED claim and hampering Young's immunity defenses. Accordingly, though they are not cited in Schell's complaint, Schell relied upon the letters in drafting it. Finally, neither Young nor Lawrenceburg objected to the letters or asserted they trigger mandatory conversion under CR 12.02.

We conclude under these unique facts that the motion to dismiss Schell's complaint was not converted to a motion for summary judgment. Also, though the standards for granting summary judgment and for dismissing a complaint for failure to state a claim upon which relief may be granted under CR 12.02 are not interchangeable, application of either standard leads to the same result here.

*Issues on Appeal*

I.      *Violation of the Ordinances*

At its core, these appeals involve construing whether the Ordinances were violated when Young summarily terminated Schell, as Chief of Police, and Hume, as City Clerk, without cause. However, prior to discerning the application of the Ordinances, we must determine whether the circuit court correctly concluded there cannot be a private right of action to enforce an ordinance in Kentucky. After all, if violation of an ordinance is not actionable then it is irrelevant whether Schell's and/or Hume's termination violated any ordinances.

A. *Declaratory Relief is Available for Violations of the Ordinances*

The circuit court's ordinances-are-not-actionable conclusion was based upon its interpretation of our Supreme Court's holding in *St. Luke Hospital, Inc. v. Straub*, 354 S.W.3d 529 (Ky. 2011), regarding the interpretation to be given to KRS 446.070. KRS 446.070 provides that "[a] person injured by the violation

of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." Our Supreme Court construed KRS 446.070 according to its plain language in holding that "KRS 446.070 does not create a private right of action for violations of the state constitution because our constitution is not a statute." *Straub*, 354 S.W.3d at 536.

The Supreme Court noted that KRS 446.070 also did not authorize a cause of action for violations of municipal ordinances because, again, ordinances are not statutes. *Straub*, 354 S.W.3d at 534-35. In doing so, it relied upon *Alderman v. Bradley*, 957 S.W.2d 264, 266 (Ky.App. 1997) and *Baker v. White*, 251 Ky. 691, 65 S.W.2d 1022, 1024 (1933). *Straub*, 354 S.W.3d at 535 n.15. In *Alderman*, 957 S.W.2d at 266-67, the Court concluded that KRS 446.070 could not authorize a claim for alleged violations of federal gun control laws because its reach did not extend to federal regulations. In *Baker*, 65 S.W.2d at 1023-25, the Court concluded that suit could not be brought under a statutory predecessor of KRS 446.070 to recover damages caused by a firecracker sold in violation of an ordinance because an ordinance was not a statute.

These cases cannot be construed to set forth a blanket, irrevocable ban on all actions based upon alleged violations of municipal ordinances where they were only concerned with the interpretation to be given to KRS 446.070 and its

predecessor. Additionally, the General Assembly has expressly provided that actions for a declaration of rights may be filed based upon alleged violations of ordinances. KRS 418.040 provides that if an actual controversy exists then "the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked." And KRS 418.045 provides in relevant part that "[a]ny person . . . whose rights are affected by . . . *municipal ordinance . . .* may apply for and secure a declaration of his right or duties[.]" (Emphasis added.)

Both Schell and Hume asked for declaratory relief in their complaints and could appropriately seek such relief. Thus, the circuit court erred to the extent that it dismissed Schell's and Hume's declaratory judgment claims based upon an erroneous conclusion that no private right of action may *ever* lie for alleged violations of ordinances. The ultimate merits of both complaints are not before us, so we express no opinion as to what proper relief Schell and Hume may receive if they ultimately prevail on remand.

### B. Construing the Ordinances

Before we analyze the ordinances at issue, we acknowledge that under longstanding Kentucky law, "[t]he primary purpose of judicial construction or interpretation of statutes or ordinances is to determine the intent and purposes thereof and if this may be determined from the language of the statute or

-14-

ordinance, no other rule of construction or interpretation is necessary." *City of Mayfield v. Reed*, 278 Ky. 5, 127 S.W.2d 847, 849 (1939). Thus, courts generally construe an ordinance in accordance with the usual, plain meaning of its terms. *Kroger Grocery & Baking Co. v. City of Cynthiana*, 240 Ky. 701, 42 S.W.2d 904, 906 (1931).

"The same canons of construction are applicable whether an ordinance or a statute is involved." 82 C.J.S. *Statutes* § 364 (2021). Under accepted principles of statutory interpretation, a court presumes the enacting body meant for all parts of an enactment to have meaning and to be able to "harmonize with related statutes [or ordinances]." *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011).

### C. Effect of the Two-Year Term Appointments

Both Schell and Hume rely upon ordinances they believe guaranteed them an absolute two-year term. For Schell, Ordinance § 34.01 provides in relevant part that "[t]he Chief of Police shall be appointed by the Mayor at the first regular meeting after the new members of the City Council take office, for a term of two years and until his successor is appointed." As for Hume, Ordinance § 30.23(A) similarly provides that "[t]he [City] Clerk shall be appointed by the Mayor at the first regular meeting after the new members of the City Council take office, for a term of two years and until his successor is appointed."

This case requires us to fill in gaps in those ordinances by determining what happens in situations when persons, like Schell and Hume, are not appointed at the first regular meeting after new members of the City Council take office. We must presume the allegations in the complaint are true when assessing a motion to dismiss for failure to state a claim. Thus, we reject Young's and Lawrenceburg's arguments that Hume's complaint must be dismissed because he has not sufficiently shown that he was reappointed to the City Clerk position in December 2018. Even though the record does not contain documents memorializing Hume's appointment, we must accept as true for purposes of resolving the motion to dismiss the allegations in Hume's complaint, including that he "was reappointed for a sixth consecutive term as City Clerk on December 1, 2018." Young and Lawrenceburg may, if they choose, explore Hume's appointment in discovery on remand and challenge whether his appointment occurred at such time.

While the Ordinances are not models of legislative draftsmanship, we conclude that only one interpretation of the Ordinances makes them consistent and gives meaning to each word. To wit: the clock for each two-year term begins ticking on the date of the first regular council meeting where new councilmembers take office and ceases ticking two years later, at the next such council meeting. Consequently, someone appointed to fill a vacancy sometime after the first regular council meeting following city council elections is entitled to serve only the

-16-

unexpired portion of the already begun two-year term—*i.e.*, until his/her successor is appointed at the next first city council meeting at which new members take office.

After all, if we accept the position of Schell and Hume that nominees would be entitled to full two-year terms from the date of their appointments, we would render ineffective language in the Ordinances specifying that each office's two-year term begins at the first regularly scheduled post-city council election meeting. And if we accept Young's and Lawrenceburg's position that the Mayor had the ability to discharge the Chief of Police or City Clerk without cause at any time, we would have to render ineffective language expressly entitling the holders of each of those offices to a two-year term, beginning at the first regular council meeting at which new councilmembers take office.

In practical terms, a determination regarding the correct construction of the Ordinances means that Schell and Hume have pled allegations sufficient to survive a motion to dismiss, albeit to a limited extent. Both Schell and Hume were discharged in early January 2019, roughly twelve days before the first regular city council meeting in January 2019—*i.e.*, the date when the two-year terms for the Chief of Police and City Clerk expired. While Young was not required to reappoint them at that time, he was not authorized to terminate them prior to that time.

*D. Declaratory Relief is Available Where the Chief of Police
and City Clerk were Terminated Without Cause*

Schell and Hume believe their terminations also violated the PPP, which generally provides that Lawrenceburg employees should only be terminated with just cause and, in Part III(E)(4)(d), also provides that "[a]ny disciplinary action which could potentially result in dismissal shall require that a pre-disciplinary hearing be offered to the employee prior to the determination of the dismissal." Young and Lawrenceburg argue the PPP affords Schell and Hume no relief.

In Kentucky, the general rule is that "[i]n those cases in which the office is held at the pleasure of the appointing power, and where the power of removal is exercisable at its mere discretion, it is well settled that the officer may be removed without notice or hearing" but "[t]he rule is different where the officer is one provided for by the Constitution, or who had a fixed term of office." *Parsons v. Breed*, 126 Ky. 759, 104 S.W. 766, 768 (1907) (internal quotation marks and citations omitted). In other words, having a fixed term of office protects an officeholder from being removed without cause at any time. *See* 2 JOHN MARTINEZ, LOCAL GOVERNMENT LAW § 10:59 *Removal* (2020). Toward that end, well over a century ago Kentucky's then-highest court explained that "[t]he general rule is that a person appointed or elected to an office, the term of which is prescribed, cannot be removed therefrom, by even the appointing power, except

-18-

upon trial of charges preferred, and of which he has notice." *Riffe v. Finsby*, 103 Ky. 631, 45 S.W. 1046, 1046 (1898). *See also Todd v. Dunlap*, 99 Ky. 449, 36 S.W. 541, 541-545 (1896).

It is uncontested that the Chief of Police, the City Clerk and the City Administrator are nonelected city officers. KRS 83A.080(2)(a), (c) and (d). Generally, Lawrenceburg "officers may be removed by the Mayor at will unless otherwise provided by statute or ordinance" under Ordinance § 30.21(B). *Accord* KRS 83A.080(3) (stating that city "officers may be removed by the executive authority at will unless otherwise provided by statute or ordinance.").

As previously discussed, Lawrenceburg has enacted ordinances which provide for a two-year term of office for the Chief of Police and the City Clerk. If Lawrenceburg wanted all of its employees to serve wholly at the will of the Mayor, why would it logically have given some of them—but, crucially, not all of them—fixed terms of office? Indeed, the only obvious logical reason to give some employees terms of office while denying that privilege to others is to insulate some employees (the ones holding jobs with fixed terms of office) from being discharged at the discretionary whim of a mayor. Therefore, notwithstanding Young's and Lawrenceburg's arguments to the contrary, there plainly is authority "otherwise provided by statute or ordinance" prohibiting the Mayor from treating

-19-

the Chief of Police and the City Clerk as at-will employees and summarily dismissing them without cause during their two-year terms of office.

The PPP contains a disclaimer stating that it is not intended to create a contractual right of employment for Lawrenceburg employees, so at-will employees remain terminable at any time without cause. *See, e.g.*, *Noel v. Elk Brand Mfg. Co.*, 53 S.W.3d 95, 99 (Ky.App. 2000) (exploring a similar disclaimer in an employee handbook that was interpreted to mean an employee was employed "at will"). While we agree with Young and Lawrenceburg that the PPP, standing alone, does not convert an at-will Lawrenceburg employee into one possessing a contractual employment relationship with Lawrenceburg, it also cannot serve to divest employees who are not at-will from the protections of a fixed term in office.

Because Schell and Hume (in his capacity as City Clerk) fell outside the at-will employment relationship, they were protected by the provisions of the PPP. And the PPP requires covered employees to be terminated only with just cause and entitles covered employees to pre-termination hearings.

The cases cited by Young and Lawrenceburg to support their contrary conclusion are all distinguishable as no legislation changed either Schell's or Hume's terms of office. *See Johnson v. Laffoon*, 257 Ky. 156, 77 S.W.2d 345, 348-49 (1934); *Young v. City of Ashland*, 125 S.W. 737, 738–39 (Ky. 1910); *Board of Councilmen v. Brawner*, 100 Ky. 166, 38 S.W. 497, 497 (1897).

-20-

Because there were no allegations of misconduct against either of them, Schell and Hume (as City Clerk) facially had the right to complete the unexpired balance of their two-year terms. Thus, Schell and Hume have pled facts sufficient to survive the motions to dismiss and to maintain declaratory judgment actions alleging they were improperly deprived of their respective offices of Chief of Police and City Clerk from their January 2, 2019 dismissal to the January 14, 2019 regular council meeting. However, they had no entitlement to serve past that day as Mayor Young had the discretion to choose whom to appoint to new two-year terms as Chief of Police and City Clerk. We reach no binding conclusions about whether Schell and/or Hume should prevail on their declaratory judgment actions as the parties have not engaged in discovery and their legal arguments have been narrowly focused only on application of relevant ordinances and statutes.

*E. The City Administrator as an At-Will Employee was Properly Terminable*

In contrast, Ordinance § 30.22, which creates the office of City Administrative Officer and defines its duties, contains no language entitling that officeholder to any term of office. Therefore, Young had the ability to remove Hume from the City Administrator position at any time, regardless of the PPP.

Consequentially, we affirm the circuit court's dismissal of all of Hume's claims regarding his termination as City Administrator. All future

-21-

references herein regarding viable claims referencing Hume will only pertain to Hume's termination as City Clerk.

> II.     *Schell's Entitlement to Protections for Police Officers*

Schell argues that as Chief of Police, he was entitled to protections which extend to all police officers pursuant to Ordinance § 34.03, KRS 95.450 and KRS 15.520.

> A. *Declaratory Relief is Available for the Chief of Police Pursuant to Ordinance § 34.03 but Unavailable under KRS 95.450 which Does Not Apply to Lawrenceburg*

Ordinance § 34.03(A) provides in relevant part that "[n]o member of the police department shall be removed from the department or reduced in rank upon any reason except inefficiency, misconduct, insubordination or violation of law, or violation of the rules adopted for the department." Section (B) of that same Ordinance provides provisions for addressing conduct of a member of the police department "justifying removal or punishment" with "charges [to be] heard by the City Council" and punishment fixed by it which can include "reducing the rank, if the accused be Chief[.]" Section (B) concludes: "No member of the police department shall be reprimanded, removed, suspended, or dismissed from the department until written charges have been made, or preferred against him, and a trial had as herein provided."

Schell contends his termination was improper because Young did not cite any enumerated reason for Schell's termination, nor did Young afford Schell a pre-dismissal trial/hearing. He also claims protection pursuant to KRS 95.450(2).

The circuit court concluded that Ordinances §§ 34.03 and 30.21 are in conflict and, therefore, Ordinance § 30.21 controls as more specific, and Ordinance § 34.03 does not apply to the Chief of Police. We disagree.

There is no conflict between the ordinances, which may be easily harmonized. Ordinance § 30.21 generally provides that the Mayor has the authority to dismiss Lawrenceburg employees without cause *unless there is authority to the contrary*. Ordinance § 34.03 provides explicit authority to the contrary by setting forth a specific set of procedures governing the process for disciplining/terminating police officers including the Chief of Police.

Young did not comply with the plain terms of Ordinance § 34.03 because he fired Schell without cause and without affording him any sort of hearing. Young and Lawrenceburg contend Ordinance § 34.03 is invalid. It is unusual for a municipality to argue its own ordinance is invalid. Nevertheless, "[t]here is a well established body of law that duly adopted legislation is entitled to a presumption of validity and we have no difficulty in extending that general principle to municipalities." *Dannheiser v. City of Henderson*, 4 S.W.3d 542, 547 (Ky. 1999).

The statutory basis for Lawrenceburg's enactment of Ordinance §

34.03 is KRS 95.450. KRS 95.450(2) contains language similar to Ordinance §

34.03, providing in relevant part:

> no member of the police or fire department in cities listed
> on the registry pursuant to subsection (9) of this section
> or an urban-county government shall be reprimanded,
> dismissed, suspended or reduced in grade or pay for any
> reason except inefficiency, misconduct, insubordination
> or violation of law or of the rules adopted by the
> legislative body, and only after charges are preferred and
> a hearing conducted as provided in this section.

KRS 95.450 essentially "acts as an assurance that police officers will not be

disciplined without 'just cause.'" *Martin v. City of Glasgow*, 882 F. Supp. 2d 903,

908 (W.D. Ky. 2012).

KRS 95.450(1) expressly applies only to urban-county governments

and the cities "included in the Department for Local Government registry," and it

is undisputed that Lawrenceburg is neither an urban-county government nor among

the cities included in that registry.

The gist of Lawrenceburg's argument is that the General Assembly

enacted a "comprehensive scheme" for police officer discipline in KRS 95.450

(but chose not to include Lawrenceburg among the cities impacted by that

scheme), so it silently preempted Lawrenceburg from enacting its own similar

-24-

scheme. Lawrenceburg's argument is based upon an extremely expansive interpretation of KRS 82.082,[4] which provides:

> (1) A city may exercise any power and perform any function within its boundaries, including the power of eminent domain in accordance with the provisions of the Eminent Domain Act of Kentucky, that is in furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute.
>
> (2) A power or function is in conflict with a statute if it is expressly prohibited by a statute or there is a comprehensive scheme of legislation on the same general subject embodied in the Kentucky Revised Statutes.

Precedent holds that "[i]n order to rise to the level of a comprehensive system or scheme, the General Assembly must establish a definite system that explicitly directs the actions of a city." *Dannheiser*, 4 S.W.3d at 548. Essentially, Lawrenceburg is arguing that by limiting KRS 95.450's reach to certain municipalities, the General Assembly intended to prohibit any other city from enacting "for cause" ordinances setting forth similar local requirements for disciplining police officers. We disagree.

Lawrenceburg contends KRS 95.450 is a comprehensive scheme for police officer discipline but it is undisputed that statute does not apply to all municipalities within this Commonwealth—including Lawrenceburg. It is illogical

---

[4] Our quotation is from the current version of the statute. The pre-2019 version contained some additional superfluous language in subsection two. The 2019 amendments merely removed the superfluous language and so did not impact the outcome here.

that a scheme which intentionally omits large swaths of the Commonwealth is somehow nonetheless a comprehensive scheme.

The parties have not cited, nor have we independently located, any statutory definition of "comprehensive scheme," but KRS 446.080(4) provides that unless the words or phrases in a statute have "acquired a peculiar and appropriate meaning in the law" we should construe statutory language "according to the common and approved usage of language[.]" "Comprehensive" is defined as "covering completely or broadly." *Comprehensive*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/comprehensive (last visited Feb. 25, 2021). KRS 95.450 fails to satisfy that definition as it does not cover Lawrenceburg and many other cities within the Commonwealth, so it certainly does not cover Kentucky's cities "completely or broadly."

The General Assembly did not enact a definite system that tied Lawrenceburg's hands from enacting a local system for disciplining police officers modeled on KRS 95.450. So, because there is not a statewide comprehensive scheme for police officer discipline contained in KRS 95.450, the "very broad power of a city to govern its affairs[,]" *City of Covington v. Tranter*, 673 S.W.2d 744, 747 (Ky.App. 1984), gave Lawrenceburg the discretion to choose to enact its own system for police officer discipline and termination. And, once enacted, those

police officer discipline ordinances became binding, and Schell was able to institute a facially valid declaratory judgment action alleging violations thereof.

Lawrenceburg alternately contends that the General Assembly enacted legislation which gave cities not covered by KRS 95.450 the option of creating a civil service commission to govern disciplining of police officers. Specifically, KRS 95.442 provides in relevant part that "[a]ny city with a population equal to or greater than eight thousand (8,000) based upon the most recent federal decennial census, *may elect* to operate under KRS 90.310 to 90.410, and, by ordinance, create a civil service commission." (Emphasis added.) KRS 90.310(1) similarly provides in relevant part that "any city of the home rule class *may elect* to operate under KRS 90.310 to 90.410, and, by ordinance, create a civil service commission which shall hold examinations as to the qualifications of applicants for municipal employment within the several departments of the city that are designated by ordinance." (Emphasis added.)

The General Assembly stated in KRS 446.010(26) that, in Kentucky's statutes, "'[m]ay' is permissive[.]" And "[t]he legislature certainly knows the scope of its power to provide mandatory, as distinguished from permissive, legislation." *Dannheiser*, 4 S.W.3d at 549. Therefore, Lawrenceburg was permitted to—but not required to—adopt a civil service commission. The General Assembly's giving a municipality the discretionary option of taking an action is

-27-

not evidence of the General Assembly's having enacted "a definite system that explicitly directs the actions of a city." *Id.* at 548. One cannot be "directed" to take a purely discretionary act.

Under Kentucky's broad home rule powers for municipalities, Lawrenceburg "may exercise any power and perform any function within its boundaries . . . that is in furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute." KRS 82.082(1). Lawrenceburg has not shown that Ordinance § 34.03 is contrary to any specific constitutional provisions or statutes. Instead, it appears that the General Assembly has mandated some cities abide by the police protection provisions of KRS 95.450 and has authorized other cities to form a civil service commission aimed at achieving those same fundamental ends. There is no indication the General Assembly intended that a city which declines to adopt a civil service commission could not voluntarily enact similar protections for its police officers as part of a public policy goal of bettering its police department by protecting its officers from improper discipline. That goal could, for example, encourage people to apply for police officer positions and promote morale and stability within the police department.

In conclusion, Schell presented a facially viable declaratory judgment claim alleging Lawrenceburg and Young violated Ordinance § 34.03 by

terminating him without good cause.[5]  However, because Lawrenceburg is not one

of the cities subject to KRS 95.450(1), Schell has no protection pursuant to KRS

95.450(2).

> **B. The Protections under KRS 15.520 were Inapplicable where**
> **it was Undisputed the Chief of Police's Termination was Not**
> **Based on a Citizen's Complaint or Misconduct**

We agree with the circuit court's dismissal of Schell's claims based

upon alleged violations of KRS 15.520.  That statute, "often referred to as the

'police officer's Bill of Rights,' details specific procedural rights for police officers

who are accused of misconduct and are facing the disciplinary processes

administratively conducted by the police agency that employs them." *Pearce v.*

*University of Louisville, by and through its Board of Trustees*, 448 S.W.3d 746,

747 (Ky. 2014).[6]  Although the version of KRS 15.520 then in effect was construed

to have an expansive reach in *Pearce*, the General Assembly subsequently enacted

---

[5] We recognize that Ordinance § 34.03 also requires a hearing on charges of misconduct.  But since there were no allegations of misconduct here, the efficacy of a hearing is facially nil.  As we held in *McCloud v. Whitt*, 639 S.W.2d 375, 377 (Ky.App. 1982), "[i]t would be absurd to require a hearing where, as here, there has been a removal under authority to remove at will rather than a removal for some cause, since there would be nothing to inquire into."  Therefore, on remand the focus should be on the portion of Ordinance § 34.03 requiring cause for terminating Schell, not the portion of the Ordinance generally affording the right to a hearing to police officers accused of misconduct.

[6] KRS 15.520, by its own terms, applies only to cities which "participate[] in the Kentucky Law Enforcement Foundation Program fund administered pursuant to KRS 15.430[.]"  KRS 15.520(2).  It appears undisputed that Lawrenceburg participates in that program, so we will simply assume for the sake of argument that it does.

-29-

significant changes to the statute to make its scope plain, namely that it applies:

(1) to complaints from citizens alleging misconduct by a police officer, KRS

15.520(3); and (2) "[w]hen an officer is accused of an act or omission that would

constitute a violation of law enforcement procedures by any individual within the

law enforcement agency employing the officer[.]"  KRS 15.520(4)(a).  Neither

situation exists here.  *See Pearce v. Whitenack*, 440 S.W.3d 392, 399 (Ky.App.

2014) (emphasis added) (explaining "KRS 15.520 sets forth specific procedural

due process steps that a city must comply with *in connection to investigating and*

*resolving a complaint of misconduct against a city police officer*.").

> KRS 15.520(10) provides in relevant part:
>
> [N]othing in this section shall be interpreted or construed
> to: . . .
>
>> (e) Apply any disciplinary action required by this
>> section to actions taken by an employing agency
>> that is not related to misconduct by a law
>> enforcement officer, such as personnel decisions
>> made by the employing agency due to a lack of
>> resources or personnel decisions related to a
>> chief's management of a police department[.]

Young's decision, as Mayor, to terminate the Chief of Police without cause is

neither a citizen's complaint nor an allegation of misconduct.  *See* KRS

15.520(1)(a), (b), and (g) (defining "citizen," "complaint," and "misconduct").

Instead, his decision was a purely discretionary personnel decision.  Though the

decision may well have violated other ordinances and/or statutes, it did not

implicate KRS 15.520. *See McCloud*, 639 S.W.2d at 377 (explaining discretionary removal not for misconduct does not implicate KRS 15.520). *See also Shelton v. Brown*, 71 F. Supp. 2d 708, 711–12 (W.D. Ky. 1998).

### III. Remaining Issues

Schell and Hume also argue they should have been allowed to proceed with their claims for declaratory relief based on the Kentucky Constitution and the wrongful terminations they incurred. Hume additionally argues he asserted a valid IIED claim relating to the manner of his termination. We must also address whether punitive damages are available and whether claims against Young in his individual capacity are barred by the doctrine of qualified official immunity.

### A. Declaratory Relief is Available for a Violation of Section 2 of the Kentucky Constitution

Similar to its conclusion regarding the availability of private causes of action for violations of ordinances, the circuit court cited *St. Luke Hospital, Inc. v. Straub*, 354 S.W.3d 529 (Ky. 2011), as its basis for concluding that no private right of action exists for allegations of violations of Section 2 of the Kentucky Constitution. As previously discussed, KRS 446.070 is not relied upon by Schell and Hume as a basis for damages. Additionally, *Straub* does not foreclose the possibility of declaratory relief for alleged violations of our state Constitution.

Other precedent unequivocally holds that declaratory relief is available in cases involving alleged violations of our state Constitution. In

-31-

*Pritchett v. Marshall*, 375 S.W.2d 253, 257 (Ky. 1963), a declaratory judgment action regarding an administrative agency, the Court held that "a claim that constitutional rights are being violated is always justiciable, even though the statute establishing the administrative procedure does not provide for judicial review." Indeed, not even sovereign immunity is a bar to a declaratory judgment action. *See University of Kentucky v. Davis*, 551 S.W.3d 443, 448 (Ky.App. 2017) (holding that "[w]here it is alleged that the state or its agency has acted arbitrarily in violation of Section 2 of the Kentucky Constitution, immunity is not available as a defense to a declaratory judgment action.").

*Straub* did not address *Pritchett*, nor has *Pritchett* otherwise been overruled. As such, *Pritchett* remains controlling in the declaratory judgment context. Therefore, the circuit court erred by relying upon *Straub* for the incorrect conclusion that no private claims of any type could *ever* properly be brought alleging violations of our Kentucky Constitution. We now turn to determining whether Schell and/or Hume pled viable Section 2 claims.

Government entities are "enjoined against arbitrariness by § 2 of the [Kentucky] Constitution, a concept we consider broad enough to embrace both due process and equal protection of the laws, both fundamental fairness and impartiality." *Pritchett*, 375 S.W.2d at 258. *See also Kentucky Milk Marketing and Antimonopoly Comm'n v. Kroger Co.*, 691 S.W.2d 893, 899 (Ky. 1985)

(broadly discussing arbitrary actions as including "[w]hatever is contrary to democratic ideals, customs and maxims[,] . . . unjust and unequal or exceeds the reasonable and legitimate interests of the people . . .[or] rests upon reasons so unsubstantial or the consequences are so unjust as to work a hardship[.]"). Because it is undisputed that Young fired Schell and Hume without cause before the end of their respective terms, Schell and Hume have presented viable claims alleging their terminations were arbitrary, unreasonable, and unfair. Consequently, the circuit court erred by dismissing their Section 2 declaratory judgment claims.

### B. Wrongful Termination Claims by the Chief of Police and City Clerk Should Not have been Dismissed

With respect to Schell's and Hume's wrongful termination claims, an at-will employee may be discharged for any reason so long that reason does not fit within a fundamental, well-established public policy, such as discharging an employee for being a member of a protected class. *Follett v. Gateway Regional Health System, Inc.*, 229 S.W.3d 925, 927 (Ky.App. 2007). As discussed above, Hume, as City Administrator, was the only at-will employee. There was no public policy reason why he could not be validly terminated.

Therefore, we proceed to considering whether the wrongful termination claims of Schell, as Police Chief, and Hume, as City Clerk, could survive the motions for dismissal.

The elements of wrongful termination are:

1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law.

2) That policy must be evidenced by a constitutional or statutory provision.

3) The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact.

*Foster v. Jennie Stuart Medical Center, Inc.*, 435 S.W.3d 629, 635 (Ky.App. 2013). The Ordinances, though binding on Lawrenceburg, are neither statutes nor constitutional provisions. Thus, violation of local ordinances which gave Schell and Hume the right to continued employment for a specified term is insufficient to support a claim for wrongful termination.[7]

However, as previously discussed, Schell and Hume have raised viable claims that their dismissals were arbitrary in violation of Section 2 of the Kentucky Constitution. Moreover, KRS 83A.080(3) largely tracks the language of the Ordinances by providing that nonelected city officers "may be removed by the executive authority at will unless otherwise provided by statute or ordinance." *See also* KRS 83A.130(9) (emphasis added) (stating "[t]he mayor shall be the appointing authority with power to appoint and remove all city employees,

---

[7] To the extent that it deemed an ordinance insufficient to constitute the public policy of Kentucky for wrongful termination claim purposes, we agree with the federal court's unpublished decision in *Roberson v. Brightpoint Services, LLC*, Civil Action No. 3:07-CV-501-S, 2008 WL 793636, *4 (W.D. Ky. 2008).

including police officers, *except as tenure and terms of employment are protected by statute, ordinance or contract* and except for employees of the council.").  And, as previously discussed, Schell and Hume have sufficiently pled that their summary removal by Young without cause was in violation of Lawrenceburg ordinances giving each two-year terms of office.

There is a public policy in Kentucky against arbitrary governmental actions.  Accepting all the allegations in their complaints as true and construing matters in a light favorable to them, Schell and Hume have each pled viable claims that their summary dismissals were arbitrary, in violation of Section 2 of the Kentucky Constitution and the aforementioned Kentucky statutes which permit cities to limit a mayor's ability to fire city employees at-will.  While such claims may not succeed on the merits, at this stage it was error for the circuit court to dismiss the wrongful termination claims relating to the Chief of Police and the City Clerk.

*C. Hume's IIED Claim was Properly Dismissed*

To present a viable IIED claim, a plaintiff must show "(1) the wrongdoer's conduct was intentional or reckless, (2) the wrongdoer's conduct was outrageous and intolerable, (3) there is a causal connection between the conduct and the emotional distress, and (4) the emotional distress suffered is severe."

*Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567, 572 (Ky.App. 2005). Hume's complaint fails to satisfy those requirements.

Hume doubtlessly was upset when he was terminated by Young. And, accepting the allegations in the record as true, Young acted brusquely and without empathy when he allegedly forced Hume to empty his office of personal effects in front of others and proclaimed Young's intent to claim that office space as his own once Hume departed. Nonetheless, not all upsetting, even callous, conduct is actionable. Standing alone, routine termination, though distressing, is insufficiently egregious to support a viable IIED claim. *Id.*

The public policy of Kentucky prevents various forms of employment discrimination based on membership in a protected class. KRS 344.040(1). However, even being fired for discriminatory reasons may be deemed insufficiently extreme and outrageous to maintain an IIED claim. *See Benningfield*, 183 S.W.3d at 572 (citing *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (applying Ohio law)). If termination based upon statutorily prohibited discrimination is insufficient to support a viable IIED claim, so is termination in apparent violation of a municipal ordinance, unaccompanied by discriminatory animus. Hume has only shown that he suffered "mere embarrassment" typical of termination rather than the severe emotional distress

which constitutes "substantially more than mere sorrow[.]" *Id*. (citation omitted). We affirm the circuit court's dismissal of Hume's IIED claim.

### D. *Punitive Damages are Not Available Against Lawrenceburg under the Claims Against Local Governments Act (CALGA)*

Having determined that the circuit court erred by dismissing some of Schell's and Hume's claims, we proceed to considering whether punitive damages are available. While punitive damages are generally available if an employee is terminated in violation of public policy, *Berrier v. Bizer*, 57 S.W.3d 271, 283 (Ky. 2001), KRS 65.2002, part of CALGA, provides that "[t]he amount of damages recoverable against a local government for death, personal injury or property damages arising out of a single accident or occurrence, or sequence of accidents or occurrences, shall not exceed the total damages suffered by plaintiff[.]" We have interpreted that statute to generally prohibit recovering punitive damages from a municipality. *Louisville Metro Housing Authority v. Burns*, 198 S.W.3d 147, 150-51 (Ky.App. 2005).

Schell and Hume argue that prohibition applies only to their intentional tort claims, not their other claims. However, CALGA applies to "[e]very action in tort against any local government in this Commonwealth for death, personal injury or property damages proximately caused by . . . [a]ny act or omission of any employee, while acting within the scope of his employment or duties[.]" KRS 65.2001(1)(b). CALGA defines "[a]ction in tort" as "any claim for

-37-

money damages based upon negligence, medical malpractice, intentional tort, nuisance, products liability and strict liability, and also includes any wrongful death or survival-type action." KRS 65.200(1). According to Schell and Hume, their claims based upon alleged violations of Section 2 of the Kentucky Constitution do not fall within that definition. The circuit court did not address that argument, instead holding only that "pursuant to KRS 65.2002 there is a prohibition against assessing punitive damages against a municipality."

As previously discussed, our Supreme Court held in *Straub*, 354 S.W.3d at 531-32, that there generally is no private right of action for monetary damages for violations of the Kentucky Constitution. Thus, though Schell and Hume may maintain declaratory judgment actions based upon Section 2, we must disagree with their argument that they may receive punitive damages if they prevail on those declaratory judgment claims. Declaratory judgments seek to fix a party's rights, not to exact punishment.

Further, to the extent that Schell or Hume seek punitive damages for any violations of state statutes (or, *arguendo*, the Ordinances), "[i]n determining whether punitive damages are authorized by a particular statute, Kentucky courts have applied a strict, literal interpretation of the relevant statutory language." *Jackson v. Tullar*, 285 S.W.3d 290, 298 (Ky.App. 2007). While the General Assembly has expressly provided recovery of punitive damages for some statutory

violations, *see, e.g.*, KRS 344.660(1), Schell and Hume have not pointed to where the relevant statutes (or ordinances) expressly permit an award of punitive damages. Therefore, the circuit court properly dismissed the claims for punitive damages.

### E. Qualified Official Immunity Applies to Prohibit Claims Against Young in his Individual Capacity

Schell and Hume challenge the circuit court's conclusion that their claims against Young in his individual capacity are barred by the doctrine of qualified official immunity. Our Supreme Court recently outlined the general principles of the qualified official immunity doctrine as follows:

> When a public officer or employee is sued in his or her individual capacity, that officer or employee may enjoy qualified official immunity which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment. Consequently, the type of act performed will determine if the qualified official immunity defense applies. The defense applies to the negligent performance of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority. It does not apply to the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.

*Ritchie v. Turner*, 559 S.W.3d 822, 831 (Ky. 2018) (internal quotation marks and citations omitted).

-39-

Often courts expend significant time and energy trying to determine if a challenged act is ministerial or discretionary, an issue that "has long plagued litigants and the courts." *Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014). Here, that question is not difficult because the decision to terminate an employee without cause is inherently discretionary. *Jefferson County Fiscal Court v. Peerce*, 132 S.W.3d 824, 833 (Ky. 2004). Instead, the pertinent question here is whether Young acted in good faith. "The burden is on the plaintiff to show that the public official or employee was not acting in good faith." *Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky. 2007).

As with many aspects of immunity, courts have struggled to express what constitutes "good faith." Often courts have tried to define good faith by flipping the equation and discussing what constitutes its opposite, bad faith. Indeed, our Supreme Court once remarked that good faith "is somewhat of a misnomer, as the proof is really of 'bad faith.' In fact, in most cases, 'good faith' is just a presumption that exists absent evidence of 'bad faith.'" *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006). In *Yanero v. Davis*, 65 S.W.3d 510, 523 (Ky. 2001), the landmark Kentucky immunity opinion, the Court similarly tried to explain good faith by discussing bad faith:

> [I]n the context of qualified official immunity, "bad faith" can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively

would have known was afforded to a person in the plaintiff's position, *i.e.*, objective unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive.

A right was not clearly established, thereby destroying the possibility of an act being taken in good faith, if the act in question occurred in a "legally uncertain environment." *Sloas*, 201 S.W.3d at 482 (citation omitted). Because "public officials generally are not hermetic, ivory-tower scribes versed in the vagaries of constitutional law[,]" an official who lacked "fair notice that her [] conduct was unlawful" has not violated a clearly established right. *Id.* (internal quotation marks and citations omitted).

We, like the circuit court, have examined the relevant ordinances, Kentucky statutes and Kentucky appellate precedent and have come to different conclusions about whether many of the claims asserted by Schell and Hume are facially viable. When two courts interpret the proper contours of the same legislative enactments differently, the situation "exemplifies the 'legally uncertain environment' in which qualified official immunity is appropriate." *Peerce*, 132 S.W.3d at 834.

Also, there is no objective indication that Young acted with malice. As explained in *Martin v. O'Daniel*, 507 S.W.3d 1, 5 (Ky. 2016) (citation omitted): "[a]cting with malice and acting in good faith are mutually exclusive. Malice is a material fact that a plaintiff must prove to sustain a malicious prosecution claim.

-41-

But, it is also a fact that defeats the defendant's assertion of qualified official immunity."

We have determined that the complaints brought by Schell and Hume set forth viable claims. However, we conclude that because Young was acting in a legally uncertain environment, he at most made "bad guesses in gray areas." *Sloas*, 201 S.W.3d at 475 (internal quotation marks and citation omitted). Additionally, the record lacks any indications of malice by Young. Consequently, we affirm the circuit court's dismissal of the claims against Young in his individual capacity based upon application of qualified official immunity.

*Conclusion*

For the foregoing reasons, the Anderson Circuit Court's order is affirmed in part as to its dismissal of: (1) all claims regarding Hume as City Administrator, (2) Schell's claims pursuant to KRS 95.450 and KRS 15.520; (3) Hume's claim as to IIED; (4) Schell's and Hume's claims regarding the availability of punitive damages; and (5) their claims against Young in his individual capacity. The circuit court's order is reversed in part as to its dismissal of: (1) Schell's and Hume's declaratory judgment actions based on the violations of the Ordinances prohibiting their dismissal without cause prior to the expiration of their two year terms of office as the Chief of Police (including Schell's declaratory action claim pursuant to Ordinance § 34.03) and as the City Clerk; (2)

their declaratory judgment actions based on violations of Section 2 of the Kentucky Constitution; and (3) their wrongful termination claims as arbitrary pursuant to violations of Section 2. On remand, if Schell and Hume prevail on their remaining claims, the circuit court must determine what relief, if any, is appropriate.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Scott A. Crosbie
Nicholas A. Oleson
Lexington, Kentucky

BRIEFS FOR APPELLEES:

Donald M. Wakefield
Lexington, Kentucky